**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

ORVILLE SCHUSTER and WILLIAM
SCHLICHTE,

        Plaintiffs,

vs.

FAY ANDERSON, F.H. ANDERSON
COMPANY, P.C., F.H. ANDERSON
COMPANY, CAL CLEVERINGA and
AMERICAN STATE BANK,

        Defendants.

No. C04-4089-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' THIRD
AMENDED AND SUBSTITUTED
COMPLAINT**

---

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . 4
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . 4
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *1.  RICO allegations* . . . . . . . . . . . . . . . . . . . . . . . 12
      *2.  Federal securities allegations* . . . . . . . . . . . . . . . . . 14

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   *A.  Rule 12(b)(6) Standards* . . . . . . . . . . . . . . . . . . . . . . 16
   *B.  Civil Rico Claims–Counts XII-XIV* . . . . . . . . . . . . . . . . . 20
      *1.  Arguments of the parties* . . . . . . . . . . . . . . . . . . . 20
      *2.  Enterprise* . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         *a.  Generally* . . . . . . . . . . . . . . . . . . . . . . . 23
            *i.  Association-in-fact enterprises* . . . . . . . . . . 24
            *ii.  Existence separate and distinct from the pattern
                 of racketeering* . . . . . . . . . . . . . . . . . . 26

        **b.**     **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

  **C. Federal Securities Allegations (Counts XXI, XXII, and XXVI)** . . . . . . 37

      **1.**     **Arguments of the parties** . . . . . . . . . . . . . . . . . . . . 37

      **2.**     **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

          **a.**     **Specification of false statements** . . . . . . . . . . . . . . 42

          **b.**     **Scienter** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

          **c.**     **Loss causation** . . . . . . . . . . . . . . . . . . . . . . . . 50

  **D. Dismissal Of State Law Claims** . . . . . . . . . . . . . . . . . . . . . . . 53

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Following this court's granting, in part, and denying, in part, of the defendants' first onslaught of motions to dismiss and the plaintiffs' subsequent amending of their complaint after the court's prior ruling, the pleadings in this longstanding case have become reminiscent of the legendary phoenix.[1] The motions to dismiss currently before the court require the court to determine, *inter alia*, if the plaintiffs have, on their third attempt, improved their allegations sufficiently to withstand the defendants' motions to dismiss. The plaintiffs' complaint, now in its fourth iteration, asserts a plethora of claims against Fay Anderson, F.H. Anderson Company, P.C., F.H. Anderson Company, Cal Cleveringa and American State Bank (collectively, "the defendants"). The plaintiffs'

---

[1]The phoenix, according to Egyptian mythology, was a fabulous red and gold bird that periodically regenerated itself. *The American Heritage College Dictionary* 1027 (3d ed. 1997). According to legend, when the mythical creature reached the end of its life span (approximately 500 years), it burned itself on a pyre of flames, and from the ashes a new phoenix arose. *See id.*; *see also see* J.K. Rowling, *Harry Potter and the Chamber of Secrets*, 206-07 (Scholastic, Inc. 1999) (depicting Fawkes, a phoenix, with fabulous red and gold plumage and the creature's regeneration on Burning Day). The phoenix is often used in literature as a symbol of death and resurrection. *See, e.g.*, Rowling, *supra*, at 320-22 (depicting Fawkes's healing of Harry Potter's fatal wound from an oversized snake).

claims arise out of allegations that defendants Fay Anderson and Cal Cleveringa fraudulently induced both Orville Schuster and William Schlichte (collectively, "the plaintiffs") into investing in a number of unsuccessful investment schemes. The plaintiffs' claims are generally for professional negligence, breach of fiduciary duty, fraudulent misrepresentation, fraudulent nondisclosure, negligent misrepresentation, fraud in the inducement based on fraudulent misrepresentation, fraud in the inducement based on fraudulent nondisclosure, negligent supervision, breach of contract, conversion, state securities law claims, federal securities law claims and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. §§ 1962(b), (c) & (d). Particularly relevant to the current motion before the court are the plaintiffs' allegations under RICO and their corresponding state and federal securities law claims. Specifically, the court is called upon here to ascertain whether plaintiffs have sufficiently pleaded the element of "enterprise," with respect to their claims under RICO. The defendants contend the plaintiffs are attempting to "fit a square peg into a round hole," and consequently, have not adequately pleaded this element as defined by Eighth Circuit precedent. The defendants argue that because the plaintiffs' third amended and substituted complaint fails to cure the critical flaws identified by the court in the second amended complaint, the plaintiffs should be denied leave to file a fourth amended complaint on the ground that the amendment is futile. The plaintiffs, not surprisingly, contend they have "resurrected" their RICO claims out of the ashes of their second-amended complaint because they have cured the defects identified by this court in its prior ruling.

In their motions to dismiss, the defendants further take issue with the plaintiffs' newly-asserted securities fraud claims and aver these claims should be dismissed because the plaintiffs' third amended complaint fails to exhibit the degree of particularity required by the Private Securities Litigation Reform Act ("PSLRA"). Accordingly, the defendants

argue that because all of the plaintiffs' federal law claims require dismissal, the remaining state law claims asserted by the plaintiffs in their third amended complaint should be dismissed from federal court. Contrarily, the plaintiffs assert they have pleaded their securities law fraud claims with sufficient particularity in order to survive the defendants' motions to dismiss. However, in the event the court dismisses the plaintiffs' federal law claims, the plaintiffs argue this court should retain jurisdiction of their asserted state law claims. Thus, this court is called upon to determine whether the plaintiffs' third amended complaint sufficiently breathes new life into their federal law claims.

## I. INTRODUCTION AND FACTUAL BACKGROUND

The procedural and factual background for this lawsuit is discussed extensively in this court's prior ruling. *See Schuster v. Anderson*, 378 F. Supp. 2d 1070, 1075-81 (N.D. Iowa 2005). The court will therefore present here only procedural matters arising since the court dismissed the second amended complaint and the new factual allegations of the proffered third amended and substituted complaint.

### A. Procedural Background

By order dated July 12, 2005, this court granted in part and denied in part the defendants' motions to dismiss the plaintiffs' second amended complaint.[2] *See id.* at 1123.

_____

[2]The second amended and substituted complaint was filed by plaintiffs Orville Schuster, William Schlichte, Schuster Co. and Le Mars Truck & Trailer against defendants American State Bank, Cal Cleveringa, Fay Anderson, F.H. Anderson Company, P.C., F.H. Anderson Company, Carl Anderson, Anderson Accounting & Tax Services, Inc. and William & Company, C.P.A. (Doc. No. 44). The plaintiffs later voluntarily dismissed defendant William & Company, C.P.A. from the controversy. (Doc. No. 45).

Specifically, with respect to the RICO claims,[3] the court held that the plaintiffs' complaint sufficiently complied with the particularity required by Rule 9(b) and that the plaintiffs could assert RICO claims against American State Bank as a "person" under a respondeat superior theory of liability. *Id.* at 1083-1105. Thus, the court denied the defendants' motions to dismiss the plaintiffs' RICO claims on these grounds. *Id.* at 1094. However, the court granted the defendants' motions to dismiss the plaintiffs' RICO claims because the plaintiffs failed to state a claim for which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure by inadequately pleading the "enterprise" requirement. *Id.* at 1098. The basis for the court's dismissal was that the plaintiffs failed to adequately plead a RICO enterprise consisting of an "association-in-fact." *Id.* Although the plaintiffs met their burden with respect to two of the three requirements—common purpose and continuity—the plaintiffs failed to adequately plead the third element—that the association-in-fact had an ascertainable structure distinct from the alleged pattern of racketeering.[4] *Id.* The plaintiffs were allowed to file a third amended and substituted

---

[3]In its July 12, 2005 order, this court ruled upon the viability of a number of other counts challenged by the various defendants in their motions to dismiss. *See generally Schuster*, 378 F. Supp. 2d at 1106-1122. These arguments, and the court's subsequent ruling with respect to these counts are not relevant to the current motions to dismiss before this court. However, in the interest of clarity, it is important to note that two of the original defendants, Carl Anderson and Anderson Accounting & Tax Services, Inc., were dismissed from the controversy. *Id.* at 1123. Additionally, Schuster Co. and Le Mars Truck & Trailer, Inc., two original plaintiffs to the action, were removed as parties from the controversy by virtue of the court's ruling. *Id.* Consequently, these parties are no longer part of the current controversy before the court. *See id.*

[4]As will be discussed in detail in this order and is discussed in the court's prior ruling and myriad other cases, a RICO enterprise must exhibit three characteristics: "'(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an
(continued...)

complaint remedying this deficiency and any additional infirmities perceived in their complaint not addressed by the court in its order. *Id.* at 1105, 1123-24. The plaintiffs were further permitted to assert additional federal and state law claims and amend existing claims in their third amended and substituted complaint. *Id.* at 1124.

On August 31, 2005, plaintiffs Orville Schuster ("Schuster") and William Schlichte ("Schlichte") filed their Third Amended and Substituted Complaint against defendants American State Bank ("ASB"), Cal Cleveringa ("Cleveringa"), Fay Anderson ("Anderson"), F.H. Anderson Company, P.C. and F.H. Anderson Company. (Doc. No. 77). Whereas the second amended complaint was 55 pages and 206 paragraphs long and alleged 20 causes of action against the defendants, the third amended complaint is 68 pages and 255 paragraphs long and asserts 27 various causes of action against the defendants. The plaintiffs' third amended complaint realleges all the counts iterated in the plaintiffs' second amended and substituted complaint, with the exception of the two counts that were dismissed by the court in its previous order. Although these eighteen causes of action are identical with respect to the types of claims, the counts have been renumbered and are as follows:

I.      Schuster's professional negligence claim against defendants Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

II.     Schuster's breach of fiduciary duty claim against Anderson, F.H.

---

ascertainable structure distinct from that inherent in a pattern of racketeering.'" *See Schuster*, 378 F. Supp. 2d at 1095-96 (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir. 1989)); *see also United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 2962 (2005); *United States v. Kehoe*, 310 F.3d 579, 586 (8th Cir. 2002); *United States v. Keltner*, 147 F.3d 662, 668 (8th Cir. 1998); *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir. 1987).

Anderson Company, P.C. and F.H. Anderson Company;

III. Schuster and Schlichte's breach of fiduciary duty claim against Cleveringa and ASB;

IV. Schuster's claim for fraudulent misrepresentation against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

V. Schuster's fraudulent nondisclosure claim against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

VI. Schuster and Schlichte's fraudulent misrepresentation claim against Cleveringa and ASB;

VII. Schuster and Schlichte's fraudulent nondisclosure claim against Cleveringa and ASB;

VIII. Schuster's claim for negligent misrepresentation against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

IX. Schuster and Schlichte's negligent misrepresentation claim against Cleveringa and ASB;

X. Schuster and Schlichte's claim for fraud in the inducement based on fraudulent misrepresentation by ASB;

XI. Schuster and Schlichte's claim for fraud in the inducement based on fraudulent nondisclosure by ASB;

XII. Schuster and Schlichte's claim of an 18 U.S.C. § 1962(b)-Racketeer Influenced and Corrupt Organizations Act ("RICO") violation by Anderson, F.H. Anderson Company, P.C., F.H. Anderson Company, Cleveringa and ASB;

XIII. Schuster and Schlichte's claim of an 18 U.S.C. § 1962(c)-RICO violation by Anderson, F.H. Anderson Company, P.C., F.H.

Anderson Company, Cleveringa and ASB;

XIV. Schuster and Schlichte's claim of an 18 U.S.C. § 1962(d)-RICO violation by Anderson, F.H. Anderson Company, P.C., F.H. Anderson Company, Cleveringa and ASB;

XV. Schuster and Schlichte's claim for negligent supervision against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

XVI. Schuster and Schlichte's negligent supervision claim against ASB;

XVII. Schlichte's breach of contract claim against Anderson;

XVIII. Schlichte's breach of fiduciary duty claim against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company.

With respect to these causes of action, the majority of the plaintiffs' allegations are identical with the exception of the RICO counts, Counts XII through XIV. With respect to Counts XII through XIV, the plaintiffs' third amended complaint attempts to clarify the alleged RICO enterprise by expounding upon the relationships between the parties involved in the alleged RICO enterprise and outlining the parties' business transactions.

The plaintiffs' third amended complaint also alleges nine new causes of action against the defendants encompassing the following claims:

XIX. Schuster's conversion claim against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

XX. Schuster's conversion claim against Cleveringa and ASB;

XXI. Schuster's federal securities law claim against Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company;

XXII. Schuster's federal securities law claim against Cleveringa and ASB;

XXIII. Schuster's state securities law claim against Anderson, F.H. Anderson

|        |                                                                       |
|--------|-----------------------------------------------------------------------|
|        | Company, P.C. and F.H. Anderson Company;                              |
| XIV.   | Schuster's state securities law claim against Cleveringa and ASB;     |
| XV.    | Schlichte's conversion claim against Cleveringa and ASB;              |
| XVI.   | Schlichte's federal securities law claim against Cleveringa and ASB;  |
| XVII.  | Schlichte's state securities law claim against Cleveringa and ASB.    |

On September 13, 2005, defendant ASB filed a Renewed Motion to Dismiss Counts XII-XIV,[5] XXII, and XXVI of the third amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 78). Specifically, ASB asserts that the RICO claims embodied in Counts XII-XIV should be dismissed for failure to state a claim upon which relief can be granted, and that federal and state securities law claims embodied in Counts XXII and XXVI, respectively, should be dismissed because the plaintiffs' third amended complaint fails to comply with the requirements promulgated in the PSLRA. ASB further argues the plaintiffs have failed to allege loss causation, another requirement of an action brought under the PSLRA. ASB contends that because all of the plaintiffs' federal claims require dismissal, the remaining state law claims should be dismissed as well because supplemental jurisdiction with this court is no longer proper. On September 13, 2005, defendants Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company filed a Renewed Motion to Dismiss Counts XII-XIV and XXI and XXIII of the

---

[5]Defendant ASB's motion actually references Counts XIV-XVI as the Counts purportedly brought under RICO. This is an unfortunate oversight, as it references the three RICO claims count numbers as delineated in the plaintiffs' second amended complaint, but only one RICO count as delineated in the plaintiffs' third amended complaint. However, the court presumes that based on ASB's arguments and corresponding brief in support of its motion, that ASB intended to reference all three of the RICO counts identified in the third amended complaint, Counts XII through XIV.

Plaintiffs' Third Amended Complaint (Doc. No. 80) for precisely the same reasons as asserted by defendant ASB. Similarly, on September 14, 2005, defendant Cleveringa filed a Renewed Motion to Dismiss Counts XII-XIV and XXII and XXVI (Doc. No. 81). Cleveringa's arguments for dismissal also mirror the arguments initially enunciated by ASB. The plaintiffs filed a combined resistance to all of the defendants' motions to dismiss on October 21, 2005. (Doc. Nos. 90 and 91). The plaintiffs assert the adequacy of the new allegations in their third amended complaint. The plaintiffs contend that the revised pleading of the RICO enterprise and the more detailed pleading of the parties business relationships and dealings are sufficient to sustain the RICO claims over objections made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs further aver their federal and state law securities claims are adequately pleaded with sufficient particularity and in compliance with the requirements of the PSLRA. Additionally, the plaintiffs argue that even if the court determines their federal claims require dismissal, the court should retain jurisdiction in the interest of fairness, efficiency and comity. Defendant ASB filed its reply on October 31, 2005 reasserting its original arguments for dismissal of the plaintiffs' federal and state law claims.[6] (Doc. No. 92). On this same date, defendant Cleveringa filed a motion to join in ASB's reply. (Doc. No. 93). On November 1, 2005, the Anderson defendants also filed a motion to join in ASB's reply. (Doc. No. 94). Both Cleveringa's and the Anderson defendants' motions to join in ASB's reply were granted on November 1, 2005 (Doc. No. 95). Oral argument on the defendants' motions to dismiss was held on December 16, 2005. At oral argument plaintiff Schuster was represented by Terrence D. Brown of Hixson & Brown, P.C., in

_____

[6]The court granted ASB leave to file an overlength brief on November 1, 2005 (Doc. No. 95).

Clive, Iowa. Plaintiff Schlichte was represented by Timothy A. Clausen of Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & Lapierre L.L.P. in Sioux City, Iowa. ASB was represented by Edward M. Mansfield of Belin, Lamson, McCormick, Zumback, Flynn in Des Moines, Iowa and Lloyd Bierma of Oostra, Bierma & Schouten in Sioux Center, Iowa. Cleveringa was represented by John C. Gray of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., in Sioux City, Iowa. Anderson, F.H. Anderson Company, P.C. and F.H. Anderson Company were represented by Robert S. Keith of Engles, Ketchum, Olson & Keith, P.C., in Omaha, Nebraska. In light of those arguments and the parties' voluminous written submissions, the court now turns to a more detailed discussion of the factual background for this case.

### B. *Factual Background*

Because of the procedural posture of this case, the court will here identify differences between the facts as alleged in the second amended complaint and as alleged in the plaintiffs' proffered third amended complaint. As mentioned previously, the plaintiffs' third amended complaint is substantially similar to their second amended complaint, with the exception of the allegations embodied in the plaintiffs' three RICO counts. Additionally, the plaintiffs' third amended complaint adds nine new causes of action, arising for the most part, out of the same set of facts previously asserted. The parties have directed their attention in the pending motions exclusively to the repleaded federal claims under RICO and the newly-asserted claims alleging violations of federal securities law. The court's supplemental jurisdiction over the state common-law claims, of course, depends upon the viability of one or more of the federal claims. The court will therefore focus, as did the parties, on the repleaded RICO allegations and the newly-asserted violations of federal securities laws.

## 1.   *RICO allegations*

Like the second amended complaint, the third amended complaint identifies the RICO enterprise as an "association-in-fact," consisting of the various defendants and other unknown individuals.  The third amended complaint, however, is more detailed and extensive with respect to this particular element of the plaintiffs' RICO claims.  Specifically, the plaintiffs' third amended complaint, in an attempt to address the previous deficiency identified by this court in the plaintiffs' second amended complaint, incorporates an entire new paragraph alleging the enterprise had an ascertainable structure distinct from that inherent in a pattern of racketeering.  The new paragraph and corresponding subparagraphs state as follows:

> 171.  The enterprise in this case had an ascertainable structure distinct from that inherent in a pattern of racketeering in one or more of the following ways:
>
> a.  ASB was at all relevant times a bank insured by the Federal Deposit Insurance Company ("FDIC") with assets in excess of $200 million.  It provided a range of services to customers in Northwestern Iowa, to include savings accounts, checking accounts, investment advice, consumer, agricultural and commercial loan services, and trust services.  It had branches in Alvord, Iowa, Granville, Iowa, and Hospers, Iowa, as well as a sister bank in Le Mars, Iowa.
>
> b.  On information and belief, at least one ASB lending officer, Cal Cleveringa had a business referral relationship with Anderson, F.H. Anderson Company, and F.H. Anderson Company, P.C., wherein he would refer banking clients needing accounting services to Anderson, F.H. Anderson Company, and F.H. Anderson Company, P.C.
>
> c.  On information and belief, ASB approved of its lending officers having referral relationships with accountants in its market area and encouraged its lending

officers to develop just such relationships.

d.  On information and belief, Anderson, F.H. Anderson Company, and F.H. Anderson Company, P.C., referred their accounting clients needing banking services to ASB and Cleveringa.

e.  On information and belief, the business referral relationships that existed at all relevant times between ASB and its banking officers with Anderson, F.H. Anderson Company, and F.H. Anderson Company, P.C., involved more customers then [sic] the Plaintiffs in this case and also customers who were not involved in the investment schemes giving rise to this lawsuit.

f.  Yournet, while operating as an investment scheme did, from time to time, produce a legitimate service wherein customers could order one or more products through its website.  Yournet maintained more than one demand deposit account relationships [sic] with ASB in order to conduct the legitimate business services it provided to customers and sales representatives.

g.  At all relevant times, Anderson, F.H. Anderson Company and F.H. Anderson Company, P.C. had legitimate accounting relationships with numerous customers in their market area, which included Le Mars, Iowa.

h.  At all relevant times, Anderson, F.H. Anderson Company and F.H. Anderson Company, P.C. had a legitimate accounting relationship with Schuster, Schuster, Co., and Le Mars Truck & Trailer, Inc.

i.  Creative Marketing conducted, for some period of time, legitimate business activities, to include the sale of prepaid telephone cards.

j.  Prior to its combination with Creative Marketing, Team, Inc. for some period of time, generated sales income.

k.  On information and belief, WWFN operated, for some period of time, as a legitimate business.  It maintained an account with ASB in order to conduct its business.

l.  R-Chief maintained an account at ASB.

m.  On information and belief, each of the business

entitles there were part of the enterprise/association in fact, followed legitimate and appropriate procedures to incorporate under various state laws, adopted by-laws and entered into contracts.

n. Irrespective of Anderson's, F.H. Anderson Company's, F.H. Anderson Company, P.C.'s, Cleveringa (sic), ASB's, Yournet's, WWFN's, and R-Chief's involvement in the investment schemes giving rise to this lawsuit, this group of individuals and entities maintained a symbiotic relationship with each other that amounted to a structure that had ongoing legitimate business relationships and involved similar and in some cases identical clients in North West [sic] Iowa.

Plaintiffs' Third Amended and Substituted Complaint, Doc. No. 77, at pp. 44-46, ¶ 171.

## 2. *Federal securities allegations*

The plaintiffs' third amended complaint incorporates new allegations against all of the defendants alleging violations of section 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5. With respect to these allegations, the following new facts can be gleaned from the third amended complaint. When Schuster invested in Yournet, he was informed he was either purchasing shares or unsecured promissory notes in Yournet. With respect to these transactions, Schuster was provided a stock subscription agreement. Both Schuster and Yournet executed the stock subscription agreement on or about September 30, 1999. The executed agreement indicated Schuster was purchasing shares in Yournet and did not indicate the money Schuster invested would be used for purposes other than the development of Yournet. In connection with Schuster's investments in Yournet in the forms of loans, Schuster received a confidential private placement memorandum sometime during the months of

March and April of 2000. The confidential private placement memorandum indicated that Schuster was purchasing convertible unsecured promissory notes in Yournet. This memorandum did not indicate that Schuster's financial investments would be used for purposes other than the development of Yournet.

Between approximately October 10, 1997 and early 2004, Cleveringa and Anderson induced Schuster to invest $1,748,873.80 in Yournet, Yournet related entities, and the Witherspoon affair. Of the total sum of Schuster's investments, $1,416,873.80 was invested after Schuster received the stock subscription agreement and the confidential private placement memorandum. These investments were funded by Schuster's personal financial assets and/or loans made to Schuster by other financial entities. In order to make a number of these investments, Schuster secured eleven loans through ASB—with Cleveringa acting as the loan officer. Schuster alleges each of these loans, detailed in this court's original order, were made to Schuster after he had received the stock subscription agreement and the confidential private placement memorandum. Cleveringa and Anderson induced Schuster to borrow the money associated with these individual loans for the purposes of investing in Yournet, Yournet related entities or the Witherspoon affair, the breakdown of which is detailed in this court's prior order. Cleveringa and Anderson represented to Schuster that these investments were safe and would earn a high rate of return, despite the existence of written disclaimers to the contrary set forth in the stock subscription agreement and the confidential private placement memorandum. As in the second amended complaint, Schuster alleges these loan proceeds were distributed for purposes other than for the purposes which Schuster believed and intended at the time he borrowed the money.

With respect to plaintiff, Schlichte, the third amended complaint contends that, similar to Schuster, Cleveringa and Anderson also induced Schlichte to invest

approximately $847,500 in Yournet, Yournet related entities or the Witherspoon affair, the exact amounts of which are detailed in this court's prior ruling. The proceeds of these investments were then deposited into various accounts and then disbursed to various individuals and entities, in contravention to the purposes in which Schlichte believed he was investing based on the representations made by Anderson and Cleveringa. It is unclear from the third amended complaint whether Schlichte executed a stock purchase agreement and/or a confidential private placement memorandum, or whether Schlichte was induced into investing in Yournet, Yournet related entities, and the Witherspoon affair solely based on the verbal representations and guarantees made by Cleveringa and Anderson.

The essence of both plaintiffs' federal and state securities claims is that Cleveringa and Anderson made material misrepresentations and omissions of fact to both Schlichte and Schuster in connection with their various investments in Yournet and that the material misrepresentations and omissions of fact caused both Schlichte and Schuster to suffer financial losses. With this background in mind, the court turns to the legal analysis of the motions now pending before the court.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(6) Standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are

true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (same); *Midwestern Mach., Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir. 1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. ) (same), *cert. denied*, 525 U.S. 821 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir. 1996) (same).

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts") ( citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595-97 (1969)); *see also LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting

*Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *accord Conley,* 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Mach., Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to dismiss should be granted

18

as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

With respect to the defendants' motions to dismiss on the plaintiffs' federal securities law claims, the Private Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, imposes additional pleading requirements on plaintiffs in private securities fraud actions. 15 U.S.C. § 78u-4(b)(1)-(2); *see Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P.*, 395 F.3d 851, 854 (8th Cir. 2005) (noting the PSLRA embodies the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure); In *re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir. 2005) (noting in order to survive a motion to dismiss, a plaintiff in a securities action must satisfy two heightened pleading requirements); *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 888-89 (8th Cir. 2005) (setting forth the pleading standards unique to securities cases); *see also In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 742 (8th Cir. 2002) ("Congress enacted two heightened pleading requirements for securities fraud cases."); *accord. In re Digital Island Sec. Litig.*, 357 F.3d 322, 328 (3d Cir. 2004) ("In requiring a 'strong inference of scienter, the PSLRA alters the normal operation of inferences under [Rule 12(b)(6) of the Federal Rules of Civil Procedure]."). "First, the plaintiff must plead falsity by specify[ing] each statement alleged to have been misleading and the reasons why each statement is misleading." *Cerner Corp.*, 425 F.3d at 1083; *see* 15 U.S.C. § 78u-4(b)(1). Additionally, if the falsity alleged in the complaint is based on information and belief, "the complaint must state with particularity all facts on which the belief is formed." *Cerner Corp.*, 425 F.3d at 1083; *see* 15 U.S.C. § 78u-4(b)(2).

Second, the PSLRA requires that the plaintiff plead scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *see Cerner Corp.*, 425 F.3d at 1083. If a complaint fails to meet these pleading requirements, the court must dismiss the complaint. 15 U.S.C. § 78u-4(3)(A); *see Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 826 (8th Cir. 2003); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 988 (E.D. Mo. 1999). The PSLRA further requires courts to disregard "catch-all" or "blanket" assertions that do not live up to the particularity requirements of the statute. *Ferris, Baker Watts*, 395 F.3d at 853; *K-tel Int'l*, 300 F.3d at 889; *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 547 (8th Cir. 2004); *Kushner*, 317 F.3d at 824; *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001). Keeping these standards in mind, the court will proceed to address the merits of the defendants' motions to dismiss.

## B.  Civil Rico Claims–Counts XII-XIV

### 1.    Arguments of the parties

As in their second amended complaint, Schuster and Schlichte allege civil RICO violations against Anderson, F.H. Anderson Company, P.C., F.H. Anderson Company, Cleveringa and ASB under §§ 1962(b), 1962(c), and 1962(d), in Counts XII, XIII, and XIV, respectively, in their third amended complaint. All of the defendants assert the same basic argument for dismissal of the RICO Counts, namely, that the plaintiffs have failed to allege facts supporting the existence of an enterprise separate

and distinct from the alleged racketeering activity.[7] The defendants contend that the plaintiffs have not cured the defect in their complaint as identified by this court in its prior order. The defendants contend the plaintiffs' allegations regarding the referral relationship that existed between Anderson and Cleveringa do not transform the entities into a RICO enterprise. Further, the defendants assert it is not enough to show that the individual members of the alleged enterprise carried on distinct activities. Rather, the defendants contend the plaintiffs must show the group as a whole had an existence distinct from the pattern of racketeering.

In resistance, the plaintiffs contend they have cured the defect in their complaint and that the allegations stated in their third amended complaint, particularly in

---

[7]For the purposes of error preservation, ASB also renews its argument that it can not be liable in a civil RICO claim based only on a *respondeat superior* theory of liability. The plaintiffs contend this court should not revisit its prior ruling with respect to this issue. Upon a thorough review of its February 4, 2005 order and the plaintiff's renewed arguments, this court concludes the facts of this case warrant the employment of the law of the case doctrine. *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986) (Under the law of the case doctrine, a court typically need not depart from a prior holding unless "substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice."); *see United States v. Unger*, 700 F.2d 445, 450 n.10 (8th Cir. 1983) ("The law of the case doctrine generally requires that a decision . . . be followed in any subsequent proceedings unless evidence subsequently introduced is substantially different of the decision is 'clearly erroneous and works manifest injustice."); *see also Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) (noting it is not improper "for a court to depart from a prior holding if convinced that it is clearly erroneous or would work a manifest injustice"). The defendant has neither supplanted the record with substantially different evidence or arguments, nor can this court conclude its prior holding was clearly erroneous or works a manifest injustice. Accordingly, this court will not revisit its prior holding with respect to this issue. Rather, this issue, if still contested, would be more appropriately raised on appeal to the appellate court.

paragraph 171, are sufficient to demonstrate the existence of a structure distinct from that inherent in a pattern of racketeering. The plaintiffs contend their third amended complaint demonstrates that the defendants functioned in a mutually beneficial and "symbiotic" relationship. The plaintiffs aver Cleveringa and Anderson had a business referral relationship with Anderson and that ASB approved of its lending agents having such referral relationships with accountants. In further support of their argument, the plaintiffs postulate that the defendants were involved in at least some legitimate business endeavors. Both Anderson and Cleveringa both allegedly held ownership interests in Creative Marketing. Anderson also held an interest in Yournet, a business entity in which ASB maintained several accounts. The third amended complaint further contends that Cleveringa acted as the account officer on all of Yournet's accounts maintained by ASB, and that ASB encouraged this relationship due to the profit generated from the interest collected on Schuster's and Schlichte's loans.

In reply, the defendants reiterate their contention that the plaintiffs have failed to properly plead the enterprise requirement. The defendants argue that the only difference in the plaintiffs' third amended complaint supporting the existence of an enterprise distinct from the pattern of racketeering is their allegations that Anderson and Cleveringa may have referred business to each other. The defendants contend that referrals are ubiquitous in the business world and that such a loose connection cannot form the basis of a RICO enterprise. The defendants aver the plaintiffs cannot cite a single case in support of their "novel" position, and cite a number of cases that the defendants contend hold the contrary. In sum, the defendants posit that the plaintiffs are simply attempting to "lump various persons and entities into a single 'association in fact,'" which is woefully inadequate to constitute an enterprise as required under RICO. Consequently, the defendants assert the plaintiffs' third amended complaint

suffers from the same fatal flaw identified by this court in its prior order. The court will now proceed to address the parties' respective arguments on this point.

### 2. Enterprise

#### a. Generally

As mentioned previously, Schuster and Schlichte allege civil RICO violations against the named defendants under §§ 1962(b), 1962(c), and 1962(d). These sections provide:

> (b)    It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(b)-(d). Common elements are present in all three of the RICO subsections alleged by the plaintiffs in their third amended complaint. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) ("Common elements are present in all four [RICO] subsections."). Particularly relevant to this action is the concept of the existence of an "enterprise." An "enterprise" is defined by RICO to include "any individual,

partnership, corporation, association, or other legal entity, and *any union or group of individuals associated in fact although not a legal entity*." 18 U.S.C. § 1961(4) (emphasis added). Thus, "The RICO Act encompasses two kinds of enterprises: legal entities, and 'associations in fact.'" *Bennett v. Berg,* 685 F.2d 1053, 1060 n.9 (8th Cir. 1982) (citing *United States v. Turkette,* 452 U.S. 576, 581-82 (1981)); *see United States v. Snider,* 720 F.2d 985, 988 n.2 (8th Cir. 1983) (noting that under § 1961(4) of RICO, two kinds of enterprises are defined, the second of which is an "association in fact") (citing *United States v. Lemm,* 680 F.2d 1193, 1198 (8th Cir. 1982)); *see also Libertad v. Welch,* 53 F.3d 428, 441 (1st Cir. 1995) ("There are, therefore, two types of [RICO] enterprises [under § 1961(4) ]: legal entities and associations-in-fact."); *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir. 1995) (noting there are two kinds of entities proscribed under § 1961(4)); *Crowe,* 43 F.3d at 204 ("A RICO enterprise can be either a legal entity or an association-in-fact."); *Aetna Cas. Surety Co. v. P & B Autobody,* 43 F.3d 1546, 1557 (1st Cir. 1994) (distinguishing between "legal entity" enterprise and "association-in-fact" enterprise); *United States v. Blandford,* 33 F.3d 685, 703 (6th Cir. 1994) ("Under § 1961(4), 'associations in fact' also are deemed enterprises."). "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. *Turkette*, 452 U.S. at 583. Consequently, "[t]he existence of an enterprise at all times remains a separate element which must be proved by the [plaintiff]." *Id.*

    *i.   Association-in-fact enterprises.* As previously noted, the plaintiffs in this case have alleged an association-in-fact enterprise consisting of Anderson, Cleveringa, ASB, F.H. Anderson Company, F.H. Anderson Company, P.C. and the entities described herein as Yournet and the Yournet-related entities. RICO defines an association-in-fact enterprise as a "union or group of individuals associated in fact

although not a legal entity." 18 U.S.C. § 1961(4). Where an association-in-fact entity is alleged, the Supreme Court has said that the enterprise may be shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette,* 452 U.S. at 583; *Libertad,* 53 F.3d at 442 (describing the requirement as alleging facts that the constituent entities or persons constituted and operated as part of an association-in-fact enterprise); *Crowe,* 43 F.3d at 205 (citing this standard from *Turkette* ); *Aetna Cas. Surety Co.,* 43 F.3d at 1557 (citing the *Turkette* standard); *United States v. Console,* 13 F.3d 641, 651-52 (3d Cir. 1993) (citing *Turkette* ); *Frank v. D'Ambrosi,* 4 F.3d 1378, 1386 (6th Cir. 1993) (citing *Turkette*).

> In other words, [plaintiffs] must show the existence of the enterprise, of which [defendants] were a part. As a matter of law, it is not sufficient that several organized, ongoing groups come together for one concerted action, unless those groups can also be shown to constitute a larger unit, over and above their separate structures and operations, and that this unit meets the *Turkette* criteria for an "association-in-fact."

*Libertad,* 53 F.3d at 442. In accordance with the guidance set forth by the Supreme Court in *Turkette*, the Eighth Circuit has determined that a RICO enterprise, including enterprises allegedly constituting an "association-in-fact," must possess three basic characteristics. *See Atlas Pile Driving Co.,* 886 F.2d at 995 (requiring proof of the same characteristics of a RICO enterprise defined as an association-in-fact as it had previously required for proof of a RICO enterprise defined as a single legal entity). These characteristics are not only mandated, but ultimately necessary "in order to avoid the danger of guilt by association that arises because RICO does not require a proof of a single agreement as in a conspiracy case, and in order to ensure that criminal

enterprises, which are RICO's target, are distinguished from individuals who associate for the commission of sporadic crime." *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir. 1987). These characteristics are the following: "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." *Id.; see also United States v. Nabors,* 45 F.3d 238, 240 (8th Cir. 1995); *Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765, 770-71 (8th Cir. 1992); *accord. Libertad,* 53 F.3d at 441 (requiring showing of same three characteristics for association-in-fact enterprise); *Crowe,* 43 F.3d at 205 (same characteristics for association-in-fact enterprise). The defendants argue that the third characteristic is absent from the plaintiffs' third amended complaint.

  **ii.**  ***Existence separate and distinct from the pattern of racketeering***. "An enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts." *United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir. 1982); *see* Eighth Circuit Model Criminal Jury Instruction § 6.18.1692D at 440 (noting that to show an enterprise exists, "[t]he government must prove that the association had a structure distinct from that necessary to conduct the pattern of racketeering activity."). Rather, a RICO enterprise must have a structure separate and distinct from the pattern of racketeering. *Bledsoe*, 674 F.2d at 665.

> This distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes. The command system of a Mafia family is an example of this type of structure as is the hierarchy, planning, and division of profits within a prostitution ring. *See, e.g.*, *United States v. McLaurin*, 557 F.2d 1064, 1067-71 (5th Cir. 1977), *cert. denied*, 434 U.S. 1020, 98 S. Ct. 743, 54 L. Ed. 2d 767 (1978) (describing structure of prostitution ring).

*Id.* Thus, to meet this requirement, a plaintiff's complaint must plead an association-in-fact "that encompasses something more than what is necessary to commit the predicate RICO offense." *Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp. 2d 892, 916 (N.D. Iowa 2000) (quoting *Diamonds Plus, Inc.*, 960 F.2d at 770). However, it is important to note that "the facts used to support the predicate offenses may be considered when conducting this inquiry." *Diamonds Plus, Inc.*, 960 F.2d at 770 (citing *United States v. Leisure*, 844 F.2d 1347, 1363 (8th Cir. 1988)). However, "[t]hat each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity." *McDonough v. Nat'l Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997); *see Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 816 (8th Cir. 1992) ("Although it is true that each member of this group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise and, thus, were not acts of the enterprise."). "In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation." *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997). Stated another way, the question this court must answer is whether the association-in-fact enterprise would exist but for the nefarious acts.

### b.    Analysis

In this instance, the RICO claims are based on the allegation of a scheme to induce Schuster and Schlichte into investing personal funds, and to obtain loans for the purposes of further investment, in entities and schemes in which Anderson, Cleveringa and/or ASB had an interest or from which Anderson, Cleveringa and/or ASB would

otherwise profit. A series of wire transfers were allegedly made by the defendants in furtherance of this scheme—and said wire transfers are plead as the predicate acts requisite to maintaining the plaintiffs' RICO claims. The plaintiffs, in their third amended complaint allege that Anderson and ASB, and Anderson and Cleveringa, had long-standing, symbiotic referral relationships, and that many of Cleveringa's contacts with Anderson were in Cleveringa's capacity as an ASB employee. The defendants assert a simple "referral" relationship is not enough to establish an enterprise under RICO and that it is not enough that each of the individuals in the enterprise carries on activities distinct from the pattern of racketeering. However, it is clear from the plaintiffs' third amended complaint, that the plaintiffs are averring much more than a simple business referral relationship between Anderson, Cleveringa, and ASB. The plaintiffs' third amended complaint, taking the facts in the light most favorable to the plaintiffs, sufficiently asserts that Anderson and Cleveringa created and operated a variety of business entities together, many, if not all, of which maintained their accounts at ASB. Although these entities were allegedly the primary vehicles used to defraud the plaintiffs, the plaintiffs' third amended complaint contends some of the entities formed by Cleveringa and Anderson also conducted legitimate transactions and even produced a profit. Putting the acts of wire fraud aside, it is clear that the allegations in the third amended complaint sufficiently allege a number of activities aside from the commission of the alleged predicate acts that demonstrate the enterprise had an on-going structure, and that its members were not merely engaging in sporadic, ad hoc criminal activity. For example, the plaintiffs' allegations, if proved, demonstrate that the various entities formed by Cleveringa, Anderson, and ASB were much more than mere "shell corporations" designed for the sole purpose of defrauding the plaintiffs. Rather, the plaintiffs allegations assert the various entities were formed

for some legitimate purposes as well, as evidenced by the entities' generation of sales and income.[8] ASB encouraged the relationship between Anderson and Cleveringa, because it received profits from the interest generated by the various loans utilized for investing in the created entities. Anderson and Cleveringa did more than simply "refer" occasional business to each other. Rather, Anderson and Cleveringa, according to the plaintiffs' third amended complaint, formulated and developed investment opportunities, with the approval of ASB, for the purpose of promoting each other's respective businesses. This highly-evolved relationship would have existed regardless of the alleged acts of racketeering. Further, it can be inferred that such a well-developed scheme had some kind of decision-making mechanism in place. The formation and development of business investment opportunities that would be mutually beneficial to all of the individuals and entities involved clearly requires that some kind of organizational structure, even though it may have been highly attenuated, be in place.

The defendants assert that it is not enough that each member of the alleged enterprise carries on activities distinct from the predicate acts of racketeering. While the defendants are correct in their assertion, *see McDonough*, 108 F.3d at 177, the plaintiffs' third amended complaint does not solely rely on the unrelated, independent

---

[8]The court notes that although the plaintiffs' statement in paragraph 38 that Cleveringa, Anderson, and other individuals "created a number of legal entities . . . *for the purpose* of establishing vehicles to be used to solicit investors in various investment schemes," somewhat undermines their contention that the enterprise was distinct from the alleged pattern of racketeering, the court does not find this assertion to be dispositive as the plaintiffs' third amended complaint does not state it was the "sole" purpose and the remainder of the complaint can be construed to assert that other purposes, such as profit generation and business proliferation, also motivated the creation of the various Yournet and Yournet related entities.

activities of the various members of the enterprise. Rather, as discussed above, the third amended complaint alleges a common nexus between the members of the alleged association-in-fact enterprise by virtue of their ties to Anderson, Cleveringa, and ASB. These entities and the individuals who formed these entities would have existed but for the nefarious acts due to their common purpose of proliferating Cleveringa's, ASB's and Anderson's respective businesses and profit generation. These facts, if proved, are sufficient to demonstrate the existence of an enterprise distinct from the pattern of racketeering and the alleged scheme to defraud the plaintiffs. *See Kragness*, 830 F.2d at 857-58 (holding RICO enterprise existed because if the predicate acts of drug smuggling were put aside, the evidence still disclosed that the enterprise purchased property, acquired airplanes, and rented airplane hangars); *United States v. Lemm*, 680 F.2d 1193, 1201 (8th Cir. 1982) (holding an arson ring constituted an enterprise under RICO because it carried on various other legitimate activities, such as purchasing and repairing property); *see also Geldermann*, 962 F.2d at 816 (holding enterprise did not exist where absent the predicate acts of mail fraud and wire fraud, the association-in-fact enterprise had no common link).

The Ninth Circuit decided a similar issue in *United States v. Feldman*, 853 F.2d 648, 660 (9th Cir. 1988), *cert. denied*, 489 U.S. 1030 (1989), and came to the same conclusion reached by this court today.[9] In *Feldman*, the defendant was convicted of

_____

[9]At the time the Ninth Circuit decided *Feldman*, it had yet to rule on whether a RICO enterprise must have an "'ascertainable structure,' distinct from that inherent in the pattern of racketeering activity," as is required in the Eighth Circuit pursuant to that court's decision in *Bledsoe*, 674 F.2d at 665. Two other circuits had previously disagreed with the Eighth Circuit's interpretation of *Turkette*, and had permitted the organization constituting the enterprise to be no more than the sum of the predicate racketeering acts.

(continued...)

violating RICO as a result of the arson of three of his businesses and his subsequent concealment of the respective insurance proceeds from various creditors. *Id.* at 651-52. On appeal, one of the many arguments that was advanced by the defendant was that the evidence failed to show the enterprise alleged had an existence separate and distinct from the pattern of racketeering activity. *Id.* at 659. The enterprise alleged consisted of an association-in-fact of seven corporations and two individuals. *Id.* at 657. The Ninth Circuit affirmed the defendant's conviction under RICO, finding sufficient evidence proved the existence of an enterprise with an ascertainable structure. *Id.* at 660. In doing so, the Ninth Circuit stated:

> The individual corporations together comprised . . . Feldman's "business interests." They existed for the purpose of making money for Feldman and [his brother]. The illegal purposes to which Feldman put them were subsidiary to that legitimate goal. The only individual charged as a member [Feldman's brother], was involved in the enterprise as a co-owner and partner . . . .

The plaintiffs' third amended complaint mirrors the situation addressed by the Ninth Circuit in *Feldman*. The individual business entities identified in the plaintiffs' third

---

[9] (...continued)

*See United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir. 1983); *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir. 1983). The Ninth Circuit did not decide this issue in *Feldman* because the court found that the plaintiffs' complaint met the high standard enunciated in *Bledsoe*. The Ninth Circuit thereafter adopted the Eighth Circuit's approach in *Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir. 1996). The Eighth Circuit's approach has become the majority approach and has been adopted by six circuits. *See id.*; *see also Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995); *United States v. Sanders*, 928 F.2d 940, 944 (10th Cir. 1991); *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (per curiam); *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir. 1985); *United States v. Riccobene*, 709 F.2d 214, 223-24 (3d Cir. 1983) (as amended).

amended complaint existed for the purpose of making money for Anderson, Cleveringa, and ASB. The third amended complaint can be read to assert that the illegal purpose of defrauding the plaintiffs was subsidiary to the legitimate goal of generating business profits. Cleveringa, Anderson, and ASB were both involved, to some degree, with each of the respective entities, either as co-owners, partners, or beneficiaries. The facts of the plaintiffs' third amended complaint, if true, show that the existence of the various corporations and entities allegedly formed by Anderson and Cleveringa made the duo's allegedly fraudulent activities possible and profitable. At the same time, the entities functioned to achieve objectives that were not illegal. As the Ninth Circuit noted in *Feldman*, this "is just the sort of legal shield for illegal activity that RICO tries to pierce." *Id.* at 656 (citing *McCullogh v. Suter*, 757 F.2d 142, 144 (9th Cir. 1985). Accordingly, as in *Feldman*, this court concludes the plaintiffs have alleged sufficient facts to survive the defendants' motion to dismiss with respect to this issue.

The defendants rely on *Moll v. U.S. Life Title Insurance Co.*, 654 F. Supp. 1012 (S.D.N.Y. 1987) and *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000) for the proposition that the mere existence of referrals is insufficient to demonstrate the existence of an ascertainable structure. As the prior discussion indicates, much more than the occasional referral of business clientele linked the association-in-fact. Further, even if all that was alleged in the plaintiffs' third amended complaint was the existence of referrals in support of their allegations of an association-in-fact, the cases cited by the defendants do not lend credence to the defendants' position. Both of the cases relied upon by the defendants involve a putative enterprise consisting of an amorphous amalgamation of entities and independent actors allegedly committing criminal acts within a specialized industry or a manufacturer selling a product through independent distributors. *See Vandenbroeck*, 210 F.3d at 700 (holding

the defendant lender's relationship with myriad secondary lenders to which the lender sold customer loans was "too unstable and fluid an entity to constitute a RICO enterprise); *Moll*, 654 F. Supp. at 1031 (holding the plaintiff's allegation of an association-in-fact enterprise comprised of a "group of attorneys . . ., abstractors, and other individuals and corporations . . . engaged in the real estate settlement industry" was insufficient to survive the defendants' motions to dismiss).  To illustrate, in *VanDen Broeck*, a group of borrowers brought a class action lawsuit under RICO against a lender.  *VanDenBroeck*, 210 F.3d at 698.  The plaintiffs' complaint alleged the defendant lender made loans to various borrowers at a higher rate based upon a secondary lender's proposed rate of interest.  *Id.* at 700.  The complaint averred the defendant would then sell the loan to the secondary lender and collect a "backend" fee. *Id.*  The plaintiffs contended these undisclosed fees were unconscionable.  *Id.* at 698. In granting the defendant's motion to dismiss, the district court noted that there were numerous secondary lenders who purchased the loans from the defendant.  *Id.* at 700. In light of the absence of a discrete numbers of lenders, the district court concluded that the alleged conspiracy "could have transpired with any lender in the secondary lending market."  *Id.* at 700.  Consequently, the district court determined the facts alleged by the plaintiffs failed to "show any type of mechanism by which this 'group' (CommonPoint and the entire secondary lending market) conducted its affairs or made decisions."  *Id.* On appeal to the Sixth Circuit, the plaintiffs argued that CommonPoint used an "Approval Advice" form, which basically insured ultimate approval of a loan by a secondary lender prior to CommonPoint's issuing of its own loan to the borrower. *Id.* In rejecting the plaintiffs' argument, the court stated as follows:

> Most cases interpreting elements applicable to this statute
> require evidence of some sort of "chain of command" or

other evidence of a hierarchy, even a highly limited one.
Evidence of any such hierarchical structure is absent from
this appeal. Although the plaintiffs argue that
CommonPoint's routine use of the "Approval Advice"
form—which assured ultimate approval of a loan by a
secondary lender before CommonPoint issued its own loan
to the customer—was evidence of an enterprise, the use of
those forms seems to indicate nothing more than that
CommonPoint had a business relationship with the
secondary lenders. It does not allege or show they
function[ed] as a continuous unit."

*Id.* The defendants, in the matter currently before this court, hone in on the Sixth

Circuit's use of the words "business relationship" and "hierarchical structure" and

argue this case reflects that business referrals are not sufficient to allege an enterprise

for RICO purposes. The court believes such a sweeping statement is an overextension

of the import of the *VanDenBroeck* decision. In *VanDenBroeck*, the main problem with

the plaintiffs' complaint was that the complaint failed to identify a discrete number of

secondary lenders involved in the putative enterprise. *See id.* As a result, the

conspiracy could have included *any* secondary lender operating in the United States.

Thus, the threshold problem with the plaintiffs' complaint in *VanDenBroeck* was the

instability and lack of continuity of the putative enterprise's members. *Id.* Given the

fact that membership in the alleged enterprise was overly fluid, it was entirely

reasonable to conclude that a secondary problem also existed with the plaintiffs'

allegations—namely, that a hierarchal structure or decision making mechanism also

could not be established because the key players in the alleged enterprise were

constantly changing. Thus, *VanDenBroeck*, at least according to this court, stands

simply for the proposition that alleging the existence of a "business relationship" with

an unlimited number of participators in a relative market is not enough to establish an

enterprise for RICO purposes. Accordingly, the *VanDenBroeck* decision is inapposite to the issue before this court—specifically, whether an enterprise can be established based on business referrals between a discrete number of members who mutually benefit from such an arrangement.

In their brief, the defendants assert "informal referrals are ubiquitous in our society," and that if the court accepts the plaintiffs' argument, "then in any case where a businessperson sued his/her accounting and one of his/her bankers, the businessperson would have a ready-made 'enterprise' for RICO purposes." The court does not believe its holding today will result in the infamous slippery slope whereby all business referrals, no matter how informal, are sufficient to assert an enterprise under RICO. The likelihood of such a possibility is sufficiently allayed by requiring continuity of the members of the enterprise and some sort of hierarchical structure and/or decision-making authority. The requirement that these two elements be alleged will sufficiently distinguish "mere business referrals" from a RICO enterprise. In the third amended complaint before this court, evidence of a hierarchical structure or decision-making authority is sufficiently inferred based on the allegations that Cleveringa and Anderson created and operated various business entities together, in some cases acting as shareholders and/or directors. Such structure is further alleged based on the third amended complaint's allegations that Cleveringa, Anderson, and ASB all collaborated to create numerous mutually beneficial investment opportunities.

This court also does not find the *Moll* case to be persuasive. In *Moll*, purchasers of residential real estate filed a class action lawsuit against the defendant U.S. Life Title Insurance Company of New York. *Moll*, 654 F. Supp. at 1016. The class action plaintiffs averred the defendant entered into agreements with various attorneys to rebate a portion of the premiums paid by purchasers for title insurance in exchange for the

referral of title insurance business. *Id.* at 1016-17. Neither the attorneys, nor U.S. Life Title Insurance Company, disclosed to the purchasers that their insurance premium cost included the cost of the rebate. *Id.* at 1017. In support of their RICO claim, the plaintiffs claimed that the group of attorneys who represented the individual purchasers and other individuals and corporate entities, including the title abstractors, were all "associated in fact" by virtue of their involvement in the real estate settlement industry. *Id.* at 1018, 1031. U.S. Life moved to dismiss the action arguing, in part, that the plaintiffs had failed to plead a proper RICO enterprise. *Id.* at 1030. Specifically, the defendant argued the plaintiffs failed "to state how these various individuals and entities functioned as a continuing unit or that they shared a common purpose to engage in a particular fraudulent course of conduct." *Id.* at 1032. The court concluded that although the plaintiffs alleged that the enterprise did share the common purpose of providing real estate settlement services to purchasers of real estate and maximizing illegal kickbacks, the plaintiffs failed to delineate how the individuals joined together as a group to achieve these purposes. *Id.* Thus, the same problem manifested itself in the plaintiffs' complaint in *Moll* as existed in the *VanDenBroeck* case—namely, that the plaintiffs complaint was inadequate because the plaintiffs failed to identify "any factual allegations regarding the continuity of structure or personnel of th[e] group," and thus, could not demonstrate how the defendants joined together and functioned as a group. *Id.* Thus, the plaintiffs' complaints in both *VanDenBroeck* and *Moll* were inadequate because the complaints simply alleged a number of different fraudulent transactions between various individuals, but failed to identify how those individuals "associated in fact" or were otherwise functioning as a "group." In this case, however, the plaintiffs have provided sufficient detail of the members of the enterprise and how they functioned and associated as a group. Accordingly, both *Moll* and *VanDenBroeck* are

inapposite.  For the foregoing reasons, the defendants' motions to dismiss, with respect to Counts XII-XIV of the plaintiffs' third amended complaint, are denied.

### C.  *Federal Securities Allegations (Counts XXI, XXII, and XXVI)*

### 1.  *Arguments of the parties*

In their third amended complaint, the plaintiffs assert, for the first time during the course of this litigation, federal securities law claims against the defendants. Specifically, Schuster asserts such claims against both Anderson, F.H. Anderson Company, P.C., and F.H. Anderson Company in Count XXI and Cleveringa and ASB in Count XXII.  Similarly, plaintiff Schlichte asserts a federal securities fraud action against Cleveringa and ASB in Count XXVI.   Essentially, both plaintiffs contend that the defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by participating in the dissemination of materially false and misleading information with respect to the plaintiffs' purchases of Yournet securities.  In their motions to dismiss, the defendants launch a three-pronged attack against the plaintiffs' third amended complaint.  First, the defendants allege the plaintiffs' third amended complaint neither  particularizes the allegedly misleading statements, nor delineates the reasons why the statements were misleading.  The defendants contend the plaintiffs' third amended complaint is inadequate because it proffers only vague generalities that the plaintiffs invested in Yournet based upon written representations encapsulated in the Stock Subscription Agreement and the Private Placement Memorandum and verbal representations made by Cleveringa, ASB, and Anderson.  Second, the defendants contend the plaintiffs' third amended complaint fails to adequately plead the element of scienter.   The defendants point out that in order to survive a motion to dismiss, the inferences of scienter derived from the facts set forth in a complaint must be both

reasonable and strong. The defendants contend the plaintiffs' third amended complaint fails to satisfy this standard because it relies on "catch-all" or "blanket" assertions in order to demonstrate the element of scienter. Moreover, the defendants argue that even if the plaintiffs' blanket assertions were sufficiently alleged with the requisite particularity, such assertions fall short because the benefits allegedly derived by the defendants are too common to be sufficient to demonstrate the existence of scienter on behalf of the defendants. Finally, the defendants contend the plaintiffs have utterly failed to allege loss causation. The defendants contend the plaintiffs are required to allege more than simply that the misrepresentations were a "but for" cause of their economic losses. Rather, the plaintiffs must state that the fraudulent statement or omission was the proximate cause of the loss suffered. This, the defendants contend, the plaintiffs cannot do because Yournet went bankrupt. Consequently, the defendants argue proximate causation has not been alleged because even if the representations allegedly professed were true, the plaintiffs would have still lost their investments based on the company's bankrupt status.

In their resistance, the plaintiffs note that this court already found their claims for fraud under state law and RICO meet the specificity requirement of Rule 9(b) of the Federal Rules of Civil Procedure in its prior order. Therefore, the plaintiffs reason that because their securities allegations incorporate the very fraud claims this court has already found to be sufficient, the court need not revisit the issue. If the court does, however, proceed to address the merits of the defendants' arguments, the plaintiffs incorporate their prior argument set forth in their prior resistance to the defendants' motions to dismiss the second amended and substituted complaint. The plaintiffs further assert they have adequately pleaded the scienter element required under the PSLRA. In arguing they have sufficiently pleaded scienter, the plaintiffs turn the

court's attention to the facts in their third amended complaint that demonstrate Anderson, Cleveringa, and ASB all benefitted in a personal way from the alleged investment scheme and that each engaged in illegal behavior. Moreover, the plaintiffs assert the defendants had superior knowledge of the facts, which implies that the statements made to the plaintiffs were known falsities. Finally, the plaintiffs argue that scienter can be inferred with respect to defendants F.H. Anderson Company, P.C., F.H. Anderson Company, and ASB because the facts of the plaintiffs' third amended complaint demonstrate the entities had a duty to monitor the actions of their agents and willingly turned a blind eye to a number of illegalities. Essentially, the plaintiffs argue that Cleveringa and Anderson defrauded the plaintiffs by selling to them what was represented as "an investment," and then turning around and stealing all or a portion of the alleged investments for their own personal use. In conclusion, the plaintiffs boldly aver that "[i]f these allegations do not amount to scienter, then no allegations will ever rise to a strong inference of scienter." Finally, the plaintiffs contend they have sufficiently alleged loss causation. The plaintiffs contend all that is required of them in pleading proximate causation of the loss is to provide the defendant with fair notice of the claim and the ground upon which it rests. Nothing further is required, argue the plaintiffs, and as such, their third amended complaint is sufficient in this respect based on their inclusion of the statement that the "material misrepresentations and/or omissions of fact proximately damaged" the plaintiffs in each of their federal securities law claims. The plaintiffs further contend loss causation is sufficiently inferrable based on the fact that the plaintiffs' third amended complaint indicates that Schuster and Schlichte invested into the defendants' scheme based on misrepresentations and omissions and that those omissions and misrepresentations caused an economic loss to the plaintiffs.

In their reply brief, the defendants reiterate many, if not all, of their previous arguments. First, the defendants argue that vague references to statements in private placement memorandums and blanket assertions are insufficient to satisfy the particularity requirement of the PSLRA and that, as such, the plaintiffs have failed to specify each statement alleged to be misleading and the reason why the statement was misleading. Second, the defendants contend the plaintiffs have failed to establish scienter because the PSLRA's scienter standard does not simply require the pleading of facts giving rise to a strong inference of scienter. Rather, the defendants argue the PSLRA requires stating, with particularity, the facts giving rise to the strong inference. The defendants contend the plaintiffs have completely failed in this respect. Finally, the defendants contend that, with respect to the loss causation, the plaintiffs' third amended complaint belies the existence of loss causation because Yournet went bankrupt, so regardless of the existence or nonexistence of misrepresentations or omissions of fact, the plaintiffs would have still suffered an economic loss due to the company's bankrupt-status. The court will now proceed to address the merits of the parties' respective arguments.

### 2. *Analysis*

Section 10(b) makes it unlawful

> to use or employ, in connection with the purchase or sale of any security …, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 specifies the following actions among the kinds of behavior proscribed by Section 10(b):

> to make any untrue statement of a material fact or to omit to
> state a material fact necessary in order to make the statement
> made, in light of the circumstances under which they were
> made, not misleading.

17 C.F.R. § 240.10b-5. "The purpose behind Rule 10b-5 is to 'transcend the gaps and limits of the common law actions available to securities traders injured by false representations or failures to disclose.'" *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1327 (8th Cir. 1991) (quoting R. Clark, *Corporate Law* 310 (1986)). The burgeoning of liability under § 10(b) and Rule 10b-5 has been aptly described as "a judicial oak which has grown from little more than a legislative acorn," *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 727 (1975) and as "a horse of dubious pedigree but very fleet of foot," *see* Louis Loss, *Fundamentals of Securities Regulations* 820 (1983). Standing under § 10(b) and Rule 10b-5 requires a showing of (1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit; (2) causation, often analyzed in terms of materiality and reliance; (3) damages; and (4) fraudulent activity occurring in connection with the purchase and sale of a security." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1533-34 (8th Cir. 1996); *see Dura Pharms., Inc. v. Broudo*, 125 S. Ct. 1627, 1631 (2005); *Ferris, Baker Watts*, 395 F.3d at 854; *K-tel Int'l*, 300 F.3d at 888; *Navarre Corp.*, 299 F.3d at 741; *see also* T. Hazen, *Law of Securities Regulations*, § 12.11 (5th ed. 2002). Although not explicitly promulgated in the text of the rule, scienter is nevertheless an acknowledged essential element of a Rule 10b-5 claim. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) (holding a private cause of action will not lie in the absence of any allegation of scienter); *see also Green Tree*, 270 F.3d at 653 (noting the scienter requirement), *Alpern*, 84 F.3d at 1534 (same); *Harris v. Union Elec. Co.*, 787 F.2d 355, 362 (8th Cir. 1986) (same).

### a. *Specification of false statements*

As previously discussed, complaints brought under § 10(b) and Rule 10b-5 are governed by the heightened pleading standards promulgated by Congress in the PSLRA. These pleading standards were adopted in an attempt to curb abuses of securities fraud litigation and are unique to securities fraud claims. *Green Tree*, 270 F.3d at 654; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002). The first heightened pleading requirement applicable to complaints brought under § 10b-5 is the requirement that the complaint specify each false statement or omission of fact and the reasons why the misstatement or omission was misleading. 15 U.S.C. § 78u-4(b)(1). To this end, the Eighth Circuit has stated:

> "[W]e cannot countenance pleading fraud by hindsight . . . ." *Green Tree*, 270 F.3d at 662. "Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). "Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *see also In re Navarre Corp.*, 299 F.3d [at 742]; *Acito*, 47 F.3d at 53. Under the [PSLRA] the complaint must allege "facts or further particularities that, if true, demonstrate that the defendants had access to, or knowledge of information contradicting their public statements when they were made." *In re Navarre Corp.*, 299 F.3d [at 742]. "What makes many securities fraud cases more complicated is that often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false. . . . [A] plaintiff must set forth, as part of the circumstances

constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*." *City of Philadelphia* [*v. Fleming Cos.*], 264 F.3d [1245,] 1260 [10th Cir. 2001] (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (en banc)).

*K-Tel Int'l*, 300 F.3d at 891.

The defendants contend the plaintiffs have failed to meet this standard. This court disagrees. From the third amended complaint, it is clear that the plaintiffs allege that Anderson, Cleveringa, and unknown individuals formed Yournet, a business entity in which they held an interest, on or about October 1, 1998. Eventually, Anderson, Cleveringa, and other individuals conspired to use Yournet as a catalyst for defrauding investors. This end was achieved primarily by inducing Schlichte and Schuster to invest in these entities, and once such investments were made, Cleveringa and Anderson would extract the funds from those entities and put them to their own personal use. In support of their securities allegations, the following facts can be garnered from the third amended complaint. When investing in Yournet, Schuster and Schlichte were told they were purchasing shares in Yournet or purchasing promissory notes by investing in Yournet. Schuster was provided with a Stock Subscription Agreement, executed on approximately September 30, 1999. The Stock Subscription Agreement indicated Schuster was purchasing shares in Yournet. Schuster was further provided a Confidential Placement Memorandum during March or April of 2000 that indicated Schuster was purchasing convertible unsecured promissory notes in Yournet. At the time of these investments, Schuster and Schlichte were also verbally informed by Cleveringa and/or Anderson that the investments were safe and would earn a high rate of return. From the third amended complaint, it becomes clear that the *reason* these statements were false and misleading when made is because Cleveringa and Anderson

43

never intended the investment money to go to Yournet.  Rather, Cleveringa and Anderson syphoned off some, or all, of Schuster's and Schlichte's financial investments for their own personal benefit.  The dates, places and individuals involved are set forth in the third amended complaint in great detail and meet, if not, exceed the heightened pleading requirements for federal securities fraud actions.  The allegations contained in the plaintiffs' third amended complaint are distinguishable from a situation where an investment agent makes an overly optimistic prediction about the future performance of an investment.  This type of situation would not satisfy the pleading requirements of the PSLRA.  Here, however, the plaintiffs have adequately asserted *why* the statements that the investments were safe were false because the plaintiffs contend Cleveringa, Anderson, and other unnamed individuals never intended to actually use the money for investment purposes.  Accordingly, the defendants' motions to dismiss are **denied** in this respect.

### b. Scienter

The defendants next contend, in their motions to dismiss, that the plaintiffs have failed to adequately plead the element of scienter.  In this circuit, scienter means the intent to deceive, manipulate, or defraud.  *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 320 (8th Cir. 1997) (citation omitted).  This case appertains not to the scienter requirement itself, but rather to the pleading requirement for scienter in securities fraud litigation.  Plaintiffs in securities fraud actions "technically do not need to meet the requirements of *both* Federal Rule of Civil Procedure 9(b) and the PSLRA, as the PSLRA supercedes reliance on 9(b) . . . and embodies the standards of 9(b)." *Navarre Corp.*, 299 F.3d at 742 (noting that the PSLRA changed the pleading requirements in private securities fraud litigation previously governed by 9(b) by requiring that a complaint plead with particularity both falsity and scienter); *Fleming*

*Cos.*, 264 F.3d at 1255 n.13 ( "The scienter pleading requirements of the PSLRA supercede the provisions of Rule 9(b) in securities fraud cases."); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) ("The effect of [the PSLRA] is to embody in the Act itself at least the standards of Rule 9(b), Fed.R.Civ.P."). Thus, contrary to Rule 9(b) of the Federal Rules of Civil Procedure, which permits "[m]alice, intent, knowledge, and other condition of mind of a person [to] be averred generally," the PSLRA requires that both falsity and scienter be pleaded with particularity.

Since Congress codified the PSLRA, there has been much confusion and resultant discussion regarding the parameters of pleading the scienter requirement. *See, e.g.*, *Green Tree*, 270 F.3d at 659-60; *see also K-Tel Int'l*, 300 F.3d at 893-94; *Navarre Corp.*, 299 F.3d at 745-46; *Helwig v. Vencor, Inc.*, 251 F.3d 540, 551-52 (6th Cir. 2001); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 978-79 (9th Cir. 1999); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999); *Novak v. Kasaks*, 216 F.3d 300, 310 (2d Cir. 2000); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 409-11 (5th Cir. 2001); *Fleming Cos.*, 264 F.3d at 1261-63; *Greebel*, 194 F.3d at 197; *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282-83 (11th Cir. 1999). Essentially, within the Eighth Circuit, three methods of establishing have emerged. *K-Tel Int'l*, 300 F.3d at 893. Scienter may first be established from facts demonstrating "'a mental state embracing intent to deceive, manipulate or defraud.'" *Id.* (quoting *Hochfelder*, 425 U.S. at 193 n.12). Second, severe recklessness may suffice to meet the scienter requirement. *Id.* Severe recklessness is established by proof that "'highly unreasonable omissions or misrepresentations'" involving "'an extreme departure from the standards of ordinary care'" were made to potential buyers or sellers and were either known or should have been known to the defendant that the statements were likely to be misleading. *Id.* (quoting *K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971,

45

978 (8th Cir. 1991)).  Finally, a strong inference of scienter may be established by yet a third method—allegations of motive and opportunity.  *Id.*  With respect to this third method, the Eighth Circuit has stated that although motive and opportunity are generally relevant, what is particularly important to establishing scienter is "a showing of an unusual or heightened motive . . . ."  *Id.* (citing *Green Tree*, 270 F.3d at 660.  In this respect, the Eighth Circuit has indicated that motives that are common to all corporate directors and officers, such as the desire to keep stock prices high, are insufficient as a matter of law.  *Id.*  Consequently, "'plaintiffs must assert concrete and personal benefit to the individual defendants resulting from the fraud.'"  *Id.* (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).

"One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate."  *Kushner*, 317 F.3d at 828; *Navarre Corp.*, 299 F.3d at 746; *Green Tree*, 270 F.3d at 665; *see Novak*, 216 F.3d at 311; *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000); *Fleming Cos.*, 264 F.3d at 1260-61.  Such allegations will more than likely be sufficient to establish a strong inference of scienter under any of the previously stated methods because often the facts giving rise to motive and opportunity may also support a reason to believe the defendant's misrepresentations or omissions were knowing or reckless.  *See K-Tel Int'l*, 300 F.3d at 893.  For example, in *Green Tree*, the Eighth Circuit found the plaintiffs sufficiently pleaded scienter where the complaint alleged the defendants published statements knowing that crucial information in the statements was based on discredited assumptions.  *Green Tree*, 270 F.3d at 665-66.  Here, the plaintiffs assert that at the time of these investments, Schuster and Schlichte were verbally informed by Cleveringa

and/or Anderson that they were investing in Yournet and that said investments were safe and would earn a high rate of return. What distinguishes the facts of this case from an overly optimistic investment forecast which never comes to fruition, is the fact that the plaintiffs' third amended complaint alleges the *reason* that Anderson and Cleveringa knew or should have known these statements were falsities was because much of the money invested never went to Yournet, but rather, ended up in Anderson's and Cleveringa's personal accounts. Thus, the facts of the plaintiffs' third amended complaint are similar to the facts alleged in *Green Tree*, because the plaintiffs are essentially asserting Anderson and Cleveringa made statements, knowing the information to be false. This fact, if proven, sufficiently demonstrates the requisite scienter on behalf of Anderson and Cleveringa. *See id.* Accordingly, defendant Anderson's and Cleveringa's motions to dismiss on this ground are **denied.**

With respect to named entity defendants (ASB, F.H. Anderson Company, P.C. and F.H. Anderson Company), the plaintiffs' third amended complaint is predicated on a theory of controlling person liability under 15 U.S.C. § 78t(a). In their resistances, the entity defendants overlook this fact and instead, argue that the plaintiffs have failed to allege a claim under Section 10(b) of the PSLRA. The entity defendants' arguments in this sense are somewhat misguided because the plaintiffs' third amended complaint asserts a claim premised on secondary, not primary, liability with respect to ASB, F.H. Anderson Company, P.C. and F.H. Anderson Company. Control-person liability is created by § 20(a) of the 1934 Act, which extends liability to persons who "control" violators of § 10(b). *Farley v. Henson*, 11 F.3d 827, 835 (8th Cir. 1993). This section, codified at 15 U.S.C. § 78t(a) provides as follows:

> (a) Joint and several liability, good faith defense
> Every person who, directly or indirectly controls any person

> liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Eighth Circuit has interpreted the statute to reach persons who have only "some indirect means of discipline or influence" less than actual direction. *Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir. 1967). The Eighth Circuit has previously noted that the control-person statute "is remedial and is to be construed liberally." *Id.* In accord with a liberal construction of the statute, the Eighth Circuit has held that in order to be secondarily liable under the statute, a controlling person need not actually participate in the alleged violation.[10] *See Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985). Thus, within this circuit, a control-person relationship exists when (1) "the alleged control person actually exercised control over the general operations of the primary violator; and (2) the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated. In the corporate setting, the corporation itself generally has been recognized as having ongoing control over its officers and employees. *See Martin v. Shearson Lehman Hutton, Inc.*, 986 F.2d 242, 244 (8th Cir.

------

[10]Other circuit courts of appeals, however, abide by the more restrictive "culpable participation" requirement, which essentially requires a showing that the controlling person participated in the violation. *See Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 889-90 (3d Cir. 1975); *Gordon v. Burr*, 506 F.2d 1080, 1085-86 (2d Cir. 1974); *see generally* Kuehnle, William H., *Secondary Liability Under the Federal Securities Laws—Aiding and Abetting Conspiracy, Controlling Person, and Agency: Common-Law Principles and the Statutory Scheme*, 14 J. Corp. L. 313, 362-63 (1989).

1993) ("We think that O'Leary's solicitation of the business while she was an employee of Shearson is sufficient to make out a prima facie case of controlling person liability."); *Troyer v. Karcagi*, 476 F. Supp. 1142, 1150 (S.D.N.Y. 1979) ("As Karcagi's employer, each of the company defendants can be considered a 'controlling person' as to Karcagi . . . ."); *SEC v. First Sec. Co.*, 463 F.2d 981, 986-87 (7th Cir. 1972) ("We have no doubt that Nay, being an employee of First Securities as its president, was 'controlled' by First Securities . . . ."). Thus, ASB and F.H. Anderson Company, P.C. and F.H. Anderson Company as the respective employers of Cleveringa and Anderson, are sufficiently alleged to be "controlling persons" within the meaning of 15 U.S.C. § 78t(a).

Generally, in order to survive a motion to dismiss, a plaintiff, at the very minimum must inform the defendants "whether they are alleged to be primary or secondary violators, as to which primary violator they are allegedly controlling persons, and whether they are controlling persons as a result of status or affirmative acts." *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F. Supp. 1028, 1035 (D. Minn. 1981) (citing *Kennedy v. Nicastro*, 503 F. Supp. 1116, 1121-22 (N.D. Ill. 1980); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 649, 656 (N.D. Cal. 1980); and *Harriman v. E. I. Dupont De Nemours & Co.*, 372 F. Supp. 101, 105 (D. Del. 1974)). Here, the plaintiffs' third amended complaint generally avers that "At all relevant times, F.H. Anderson Company, P.C. and/or F.H. Anderson Company, possessed the power to exercise control over Anderson's acts and affairs and also possessed the power to control the misrepresentations Anderson made and the omissions which Anderson failed to disclose." Likewise, with respect to defendant ASB, the third amended complaint states, "At all relevant times, ASB exercised control over Cleveringa's acts and affairs and also possessed the power to control the

misrepresentations Cleveringa made and the omissions Cleveringa failed to disclose."
These allegations are sufficient to inform the defendants "whether they are alleged to be
primary or secondary violators, as to which primary violator they are allegedly
controlling persons, and whether they are controlling persons as a result of status or
affirmative acts." *See Antinore v. Alexander & Alexander Servs., Inc.*, 597 F. Supp.
1353, 1359-60 (D. Minn. 1984) (denying motion to dismiss where the plaintiffs'
complaint named the corporation a secondary violator, identified the primary violator it
allegedly controlled, and the relationship upon which control liability was being
asserted). Accordingly, the entity defendants' (ASB, F.H. Anderson Company, P.C.
and F.H. Anderson Company) motions to dismiss in this respect are **denied**.

### c.    *Loss causation*

The defendants' final contention is that the plaintiffs have failed to adequately
plead loss causation. Under 15 U.S.C. § 78u-4(b)(4) of the PSLRA, private plaintiffs
are further required to prove that the defendant's fraud caused their pecuniary loss. In
pertinent part, the statute states the following:

> Loss causation. In any private action arising under this
> chapter, the plaintiff shall have the burden of proving that
> the act or omission of the defendant alleged to violate this
> chapter caused the loss for which the plaintiff seeks to
> recover damages.

15 U.S.C. § 78u-4(b)(4). Loss causation provides the necessary nexus between the
challenged conduct and the plaintiff's suffered economic loss. *Stephenson v. Deutsche
Bank AG*, 282 F. Supp. 2d 1032, 1058 (D. Minn. 2003). Thus, a plaintiff must prove
that the pecuniary injury is directly attributable to the wrongful conduct. *Id.* However,
it does not need to be the exclusive or even primary cause. Thomas Lee Hazen, *Law of
Securities Regulation* § 12.11 (5th ed. 2002). Rather, it is enough to "show 'some

causal nexus' between [the defendant's] improper conduct and plaintiff's losses . . . ."
*In re Control Data Corp. Sec. Litig.*, 933 F.2d 616, 619-20 (8th Cir. 1991); *accord.*
*Miller v. Asensio & Co.*, 364 F.3d 223, 232 (4th Cir. 2004); *Semerenko v. Cendant*
*Corp.*, 223 F.3d 165, 186-87 (3d Cir. 2000); *Caremark, Inc. v. Coram Healthcare*
*Corp.*, 113 F.3d 645, 649 (7th Cir. 1997).

  The United States Supreme Court recently addressed the pleading requirements
of proximate causation or economic loss in federal securities law cases. *See Dura*
*Pharms.*, 125 S. Ct at 1634. In *Dura Pharmacueticals, Inc. v. Broudo*, the Court held
that a complaint brought under federal securities law must provide the defendant with
"'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.*
(quoting *Conley*, 355 U.S. at 47). *Dura* made clear that, with respect to fraud-on-the-
market cases, a plaintiff cannot plead loss causation merely by asserting that the
security at issue was purchased at an artificially inflated price. *Id.* at 1633-34. The
reason why a plaintiff must allege more, at least with respect to fraud-on-the-market
cases, is because the lower price "may reflect, not the earlier misrepresentation, but
changed economic circumstances, changed investor expectations, new industry-specific
or firm-specific facts, conditions or other events, which taken separately or together
account for some or all of that lower price." *Id.* at 1631. Accordingly, the inflated
purchase price will not inevitably lead to a future economic loss. *Id.* at 1631.
Consequently, in these types of cases, more than just a naked allegation that the
plaintiff purchased shares at an artificially inflated price is required in order to survive
a motion to dismiss. *Id.* at 1634.

  Although *Dura* is relevant insofar as it holds a complaint asserting a federal
securities law claim must adequately plead loss causation, *Dura* provides little, if any
guidance, with respect to what a complaint outside of a fraud-on-the market case must

contain. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 944 n.1 (9th Cir. 2005) (noting *Dura* is not controlling where the plaintiff plead that the defendants' misrepresentation was causally related to the pecuniary loss sustained). In the matter before the court, the plaintiffs assert that the "material misrepresentations and/or omission of facts in [sic] proximately damaged [the plaintiffs] in that [they] suffered financial losses." Third Amended Complaint ¶¶ 222, 231, 250. Essentially, the third amended complaint states that the plaintiffs were damaged by the defendants' fraud because the money they allegedly invested in Yournet went, instead, into the defendants' own pockets. Thus, plaintiffs lost not only their original investment, but also their perceived return on the investment. These facts allege a sufficient nexus between the alleged misrepresentation and the plaintiffs' pecuniary loss to survive a motion to dismiss. The defendants posit, however, that the plaintiffs cannot establish loss causation due to the fact that Yournet went bankrupt. Essentially, the defendants contend that even if the plaintiffs' money had been invested in Yournet, they still would have suffered an economic loss because Yournet itself went bankrupt. A comparable argument was advanced, and ultimately, rejected by the Eighth Circuit in *Arthur Young & Co. v. Reves*, 937 F.2d at 1331-32. There, Arthur Young argued the district court erred in denying its motion for judgment notwithstanding the verdict with respect to both federal and state securities law claims. *Id.* at 1314. In *Arthur Young*, a class of purchasers of demand notes argued that Arthur Young failed to disclose material information about the financial health of the Farmer's Cooperative of Arkansas and Oklahoma, Inc. in audit reports and financial reports prepared by Arthur Young. *Id.* at 1328. Arthur Young advanced the argument on appeal that the class of plaintiffs failed to prove loss causation. *Id.* at 1331-32. Specifically, Arthur Young argued that loss causation could not be proved because the Farmer's Cooperative at issue ultimately

went bankrupt for reasons unrelated to the alleged fraud.  *Id.* at 1332.  In rejecting

Arthur Young's argument, the Eighth Circuit noted the test for loss causation was

"broad," and that "all the Class needed to show was that the Co-op's bankruptcy was

somehow 'related' to Arthur Young's nondisclosures."  *Id.*  Thus, based on the Eighth

Circuit's language in *Arthur Young*, bankruptcy, if somehow related to the alleged

fraud, does not automatically defeat the existence of loss causation.  Rather, plaintiffs

in such cases need only show that the bankruptcy was tied to the fraud, or in the Eighth

Circuit's words, was "somewhat related," to the alleged fraud.  Here, the plaintiffs

have done just that.  It is a reasonable inference from the plaintiffs' third amended

complaint, that if Anderson and Cleveringa were using Yournet's capital to line their

own pockets, the company would eventually find itself on the verge of financial ruin.

These facts are sufficient to survive a motion to dismiss.  The defendants' motions are

further **denied** in this respect.


### D.  Dismissal Of State Law Claims

In their motions to dismiss, the defendants argue that, if the court dismisses all

the federal law claims, the remaining state law claims should be dismissed as well

pursuant to 28 U.S.C. § 1367(c)(3), which permits a federal district court to decline to

exercise supplemental jurisdiction where all the claims over which the district court had

original jurisdiction have been dismissed.  Because this court has determined that the

plaintiffs' third amended complaint sufficiently pleaded both federal RICO and

securities law causes of action, the court will not entertain the defendants' arguments

with respect to this issue.[11]

---

[11]Whether a court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) is determined by the following test: "'a federal court has jurisdiction over an entire action, including state-law claims, wherever the federal-law and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger, Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (in turn quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966))); *see Cossette v. Minn. Power & Light*, 188 F.3d 964, 973 (8th Cir. 1999) ("A district court may exercise supplemental jurisdiction over state law claims that arise from the same nucleus of operative fact as the plaintiff's federal claims and when the plaintiff would ordinarily be expected to try all the claims in one judicial proceeding.") (citing *Kan. Pub. Employees Ret. Sys.*, 77 F.3d at 1067); *Meyers v. Trinity Med. Ctr*, 983 F.2d 905, 907 (8th Cir. 1993); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1005 (8th Cir. 1990); *Appelbaum v. Ceres Land Co.*, 687 F.2d 261, 262-63 (8th Cir. 1982); *Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 734-35 (8th Cir. 1978). In sum, supplemental jurisdiction under subsection (a), is appropriate where the federal-law claims and the state-law claims in the case "derive from a common nucleus of operative fact" and are such that a plaintiff would ordinarily be expected to bring all of the claims in one suit. *See Kan. Pub. Employees Ret. Sys.*, 77 F.3d at 1067. The court notes that all of the plaintiffs' causes of action arise out of the defendants' allegedly fraudulent conduct which thereby induced the plaintiffs into investing their money in Yournet and Yournet-related entities. Accordingly, the court may properly exercise supplemental jurisdiction in this case. Further, it behooves the court to note that none of the discretionary situations in which a district court may decline to exercise supplemental jurisdiction, as set forth in 28 U.S.C. § 1367(c) are applicable under the facts and procedural posture of this case. Accordingly, all of the plaintiffs' claims properly remain before this court.

### *III. CONCLUSION*

Like the legendary Fawkes depicted in *Harry Potter and the Chamber of Secrets*, *see* Rowling*, supra*, at 320-22, the plaintiffs' complaint has been born anew out of the ashes of its former existence.[12] The plaintiffs' third amended complaint sufficiently alleges facts demonstrating the existence of a RICO enterprise that is distinct from that inherent in a pattern of racketeering. Further, the court concludes the plaintiffs have complied with the requirements of the PSLRA. The plaintiffs have sufficiently identified the misleading statements and the reasons why those statements were misleading. Moreover, the plaintiffs' third amended complaint sufficiently alleges facts that give rise to a strong inference of scienter. Finally, the plaintiffs have adequately pleaded loss causation with respect to their federal securities law claims. Because the court has original jurisdiction over the plaintiffs' federal RICO and securities law claims, this court may properly exercise its supplemental jurisdiction over the state law claims asserted by the plaintiffs. Accordingly, the defendants' motions to dismiss are **denied** in their entirety.

---

[12]According to legend, a phoenix had a very long life expectancy—approximately 500 years. This court notes that it has serious questions regarding the length of the life expectancy of the plaintiffs' third amended complaint. The plaintiffs' third amended complaint has survived the defendants' motions to dismiss, at least in certain respects, by the barest of margins. In light of the more stringent standards that must be met in order to survive a motion for summary judgment, the future viability of the plaintiffs' complaint is a question for another day.

**IT IS SO ORDERED.**

**DATED** this 23rd day of December, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT
COURT
NORTHERN DISTRICT OF IOWA