IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF ORVILLE SCHUSTER, | ) | Case No. C04-4089 MWB |
| Plaintiff, | ) | |
| | ) | DEFENDANT AMERICAN STATE |
| v. | ) | BANK'S BRIEF IN SUPPORT OF |
| | ) | MOTION FOR SUMMARY |
| CAL CLEVERINGA and AMERICAN | ) | JUDGMENT |
| STATE BANK, | ) | |
| Defendants. | ) | |
| | ) | HEARING REQUESTED |
| | ) | |
| | ) | |
| | ) | |

**TABLE OF CONTENTS**

I.    INTRODUCTION. ................................................................................................ 3

II.   SUMMARY OF UNDISPUTED FACTS. ........................................................ 4

III.  SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AMERICAN
      STATE BANK. ................................................................................................... 7

      A.   Summary Judgment Should Be Granted on All Claims Predicated on a Fiduciary
           Relationship (Counts III, VII, and XI), Because There Was No Fiduciary
           Relationship Between Cal Cleveringa and Orville Schuster, Let Alone Between the
           Bank and Schuster. ................................................................................................ 8

      B.   Summary Judgment Should Be Granted on the Negligent Misrepresentation Claim
           (Count IX), Because the Bank Was Not in the Business of Providing Information
           and the Alleged "Misrepresentations" Were Not Actionable in Any Event. ............ 10

      C.   Summary Judgment Should Be Granted on All Loan Rescission Claims (Counts X
           and XI) Because All Loans were Either Paid Off or Reinstated by Agreement on
           January 23, 2004, at Which Time the Bank Agreed to Waive All Default Interest. 13

      D.   Summary Judgment Should Be Granted on all RICO Claims (Counts XII-XIV)
           Because There Is No Evidence of an "Enterprise," and the Claims Also Fail to Meet
           the Requirements of §§ 1962(b), (c), and (d) Respectively. ..................................... 14

E.    Summary Judgment Should be Granted on the Negligent Supervision Claim (Count XVI) Because Schuster Cannot Establish that American State Bank Should Have Known of Cleveringa's Allegedly Tortious Conduct or that Its Allegedly Negligent Supervision Proximately Caused Schuster's Losses.................................................. 20

F.    Summary Judgment Should Be Granted on the Conversion Claim (Count XX) Because There Is No Proof that the Bank Converted Funds Belonging to Schuster or That Schuster Suffered Loss from the Alleged Conversion. .................................... 22

G.    Summary Judgment Should Be Granted on All Securities Fraud Claims (Counts XXII and XXIV) Because These Claims are Barred by the Statute of Limitations, Schuster Cannot Establish Loss Causation, Schuster Has Insufficient Evidence of Control by the Bank, and There Was No Fraud in Connection with the Sale of a Security. ................................................................................................................ 24

H.    Summary Judgment Should Be Granted on All Misrepresentation Claims (Counts VI, IX, X, XI, XII, XIII, XIV, XXII, and XXIV) Because Schuster Cannot Establish Justifiable Reliance. ................................................................................................ 28

I.    Summary Judgment Should Be Granted on All Claims Except Negligent Supervision Because Any Challenged Actions of Cleveringa Were Not Within the Scope of His Employment. ...................................................................................... 30

J.    Summary Judgment Should Be Granted on All Fraud Claims Related to the Witherspoon Affair (Including RICO) Because Schuster Cannot Establish that Any Statements Cleveringa Made About Witherspoon Were Knowingly False.............. 33

K.    Summary Judgment Should Be Granted on All Claims Relating to Pre-November 2000 Investments. ................................................................................................... 34

CONCLUSION.............................................................................................................. 35

Pursuant to Fed.R.Civ.P. 56, Defendant American State Bank ("the Bank") submits the following brief in support of its motion for summary judgment on all claims against it on the ground there is no genuine issue of material fact and the Bank is entitled to judgment as a matter of law.

## I.    INTRODUCTION.

This case involves an experienced businessman's decision to put his money into two speculative, high-risk ventures, a start-up internet company known as Yournet and, later, an opportunity that promised a short-term 500-1000 % rate of return known as the Witherspoon Affair. Seeking a deep pocket to repay his losses, the plaintiff has decided to sue American State Bank, whose only role in this matter was that it loaned some of the money Mr. Schuster used to fund these investments.

Some of the key points of this motion are as follows:

- Schuster always knew these were high-risk investments.

- Schuster had the advice of his long-time accountant and business advisor in making these investments.

- Schuster never talked to anyone from the Bank about these investments, except a loan officer named Cal Cleveringa who did not impress him, and all Cleveringa allegedly said was that these were "good" investments and would "make money."

- Schuster never even talked to Cleveringa until after he had already been investing in Yournet for a couple of years.

- Schuster admitted that Cleveringa believed in Witherspoon as much as he did. Schuster also admitted he should have known from the beginning that Witherspoon was a scam.

As the following discussion will demonstrate, there is no genuine issue of material fact and the Bank is entitled to judgment as a matter of law on all claims.

## II.    SUMMARY OF UNDISPUTED FACTS.

Mr. Schuster was the highly successful owner of a trucking business in LeMars (App. 20-21).  Over the years, his investments branched out into areas other than trucking, including grain, recycling, apparel, a trailer park, and a warehouse (App. 63-64).  For accounting and business advice, Mr. Schuster relied on Fay Anderson, who had been his accountant since 1966 (App. 21-23, 25, 27-28).

In 1997 and early 1998, Mr. Schuster invested $77,000 in Team Inc. (App. 268).  Then, starting in 1998, Mr. Schuster invested large sums of money in Yournet, an internet start-up based in Shakopee, Minnesota (App. 14-16, 268).  As Schuster well knew, his advisor Anderson was an officer and major stockholder in Yournet (App. 104-05, 213).  In fact, after Chuck Hinnenkamp (the founder of Yournet), Anderson was the second largest stockholder (App. 212-13).

Schuster's level of trust in Anderson was such that he would give Anderson large checks made out to him (Anderson) or to R Chief, a company owned by Anderson's wife (App. 38, 101).  Schuster would then rely on Anderson to invest those funds as Schuster desired.

After Schuster had already been investing in Yournet for several years, he met Cal Cleveringa, a loan officer with American State Bank (App. 66, 97-98).  Anderson previously

knew Cleveringa (App. 66). Schuster borrowed money from American State Bank. The first loan was taken out on November 1, 2000 (App. 70). The proceeds were apparently invested in Yournet. However, the collateral for the loan consisted of CD's held by Schuster at his regular bank, Primebank in LeMars. Schuster could have simply borrowed the money from his regular bank had he chosen to do so (App. 50, 111-12).

Thereafter, Schuster made additional borrowings from American State Bank. All the loans were well-secured by CD's and/or real estate. When Schuster asked the Bank to lend against Yournet, the Bank refused to do so, citing the speculative nature of this investment (App. 111, 252).

Schuster and Cleveringa were not a good personality match (App. 45, 102). Schuster never socialized with Cleveringa (App. 102). Schuster never turned over his funds to Cleveringa (App. 101).

Schuster alleges that Cleveringa made vague statements that the Yournet investments were "good investments" and "would make money" (App. 103).

Over the years, the always precarious financial situation of Yournet deteriorated. Schuster knew of this. In May 2001, he attended a meeting where Chapter 11 was discussed but was rejected as an option because of the outstanding tax liens (App. 48-49, 182, 188-89). At that meeting, Cleveringa told Schuster his CD's were at risk (App. 107). In fact, at that point, Schuster knew that his investment in Yournet was "going down the tubes" (App. 49, 107). Nevertheless, Schuster put more money into Yournet, at least in part because he wanted to help out Anderson (App. 35-36, 49, 108). In July 2002, Yournet entered bankruptcy, and notice was mailed to Schuster as a creditor/investor (App. 92).

In October 2002, Schuster learned of an opportunity to "invest" in a lawsuit recovery. The story was that a Darrell Witherspoon from North Carolina had won a $600 million verdict, and only needed to clear away some liens in order to get access to the judgment (App. 72, 87, 91). Short-term returns of 500-1000 % (*e.g.*, $150,000-$300,000 on a $30,000 investment) were promised (App. 40, 91). In 2002 and 2003, Schuster invested a total of $480,000 in this alleged lawsuit (App. 268-71).

Again, Schuster claims that both Anderson and Cleveringa recommended the investment. Again, all he alleges Cleveringa said was that Witherspoon was a "good" investment and "would make money" (App. 103).

Schuster admits that he should have known Witherspoon was a scam (App. 40, 91). It was "too good to be true" (App. 88, 114). Also, he admits that Anderson and Cleveringa were taken in by the scam, just as he was. They believed it, just as he did (App. 39, 87, 89).

By January 2004, Schuster had learned that Witherspoon was a scam and that Yournet was a bankrupt failure (App. 112, 128). He also had overdue balances on four loans from American State Bank, and default interest in excess of $100,000 was due (App. 112, 127). On January 23, 2004, a meeting between Schuster, his son Steve Schuster, and representatives of the Bank (not Cleveringa) was held (App. 126-27). Schuster alleged that the Bank had some responsibility for what had happened to his investments (App. 112, 127). The Bank denied this (App. 112). The parties agreed that (1) the Bank would write off the default interest on all loans, (2) Schuster would pay off two of the loans, and (3) the other two loans would be reinstated current (App. 112, 126-28, 247, 272).

Subsequently, in September 2004, Schuster filed suit against Anderson, Cleveringa, and the Bank. Schuster has settled against Anderson, leaving only his claims against Cleveringa and the Bank.

### III.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AMERICAN STATE BANK.

American State Bank believes that the undisputed facts entitle it to summary judgment on *all* of Schuster's claims. However, some of the grounds apply to more than one claim, and two of the grounds apply only to portions of claims. Because of the length of Schuster's Third Amended Complaint, we have organized our arguments as follows:

- Summary judgment on all claims predicated on a fiduciary relationship (Counts III, VII, and XI);

- Summary judgment on negligent misrepresentation (Count IX);

- Summary judgment on loan rescission claims (Counts X and XI);

- Summary judgment on RICO (Counts XII, XIII, and XIV);

- Summary judgment on negligent supervision (Count XVI);

- Summary judgment on conversion (Count XX);

- Summary judgment on securities fraud claims (Counts XXII and XXIV);

- Summary judgment on all misrepresentation claims;

- Summary judgment on all claims against negligent supervision based on lack of respondeat superior;

- Partial summary judgment on all Witherspoon claims;

- Partial summary judgment on all claims relating to pre-November 2000 investments.

In addition, we have attached a table to this brief as Exhibit A to further clarify the summary judgment grounds applicable to each count of the complaint that involves Schuster and the Bank.[1]

**A.    Summary Judgment Should Be Granted on All Claims Predicated on a Fiduciary Relationship (Counts III, VII, and XI), Because There Was No Fiduciary Relationship Between Cal Cleveringa and Orville Schuster, Let Alone Between the Bank and Schuster.**

Three counts of Schuster's complaint (III, VII, and XI) are predicated on the existence of a fiduciary relationship between Schuster and Cleveringa.[2]    Because the undisputed facts demonstrate that no such relationship existed, summary judgment should be granted in the Bank's favor on those claims.

In Iowa, a fiduciary relationship exists when one person is "under a duty to act for the benefit of another as to matters within the scope of the relationship." *Stotts v. Eveleth*, 688 N.W.2d 803, 811 (Iowa 2004).   The Iowa Supreme Court has held that such a relationship is "*ordinarily nonexistent*" between bank and borrower. *Manson State Bank v. Tripp*, 248 N.W.2d 105, 108 (Iowa 1976) (emphasis added).   Although the specific facts and circumstances of the relationship between a bank and borrower can give rise to a fiduciary relationship, *Weltzin v.*

---

[1] Of course, we have not addressed claims involving parties other than Schuster and the Bank, *e.g.*, William Schlichte and/or Fay Anderson.

[2] Count III alleges a breach of fiduciary duty.   Counts VII and XI allege breach of a duty of disclosure based on "the relationship of special trust and confidence."    Third Amended Complaint ¶¶ 120, 154.

*Cobank, ACB*, 633 N.W.3d 290, 293 (Iowa 2001), there are no circumstances here which warrant a departure from the general rule.

By his own admission, Schuster did not even know Cleveringa before he borrowed money from the Bank in November 2000 (App. 97-98). Schuster's only prior information concerning Cleveringa was that he had been involved in a "bad deal" (App. 102). Cleveringa did not personally impress Schuster; they were not a personality match; and Schuster never once socialized with Cleveringa (App. 45, 102).

Schuster's relationship with Cleveringa (or lack thereof) stands in sharp contrast to the relationship Schuster had with Fay Anderson. Anderson was Schuster's trusted accountant who Schuster had known for more than thirty years (App. 21-23, 25, 27-28). The record indicates that Schuster always gave his investment checks to Anderson, never to Cleveringa (App. 38, 101). In fact, Schuster admitted that he never even met with Cleveringa without Anderson present (App. 44, 98, 113). Additionally, Schuster never signed a check in Cleveringa's presence. He would sign the checks at premises other than the Bank and then give the money to Anderson (App. 54).

Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another. *Kurth v. Van Horn*, 380 N.W.2d 693, 696 (Iowa 1986).

Nothing in the record establishes these indicia here. Schuster was unimpressed with Cleveringa. Schuster was a successful businessman who owned a multi-million dollar trucking

company; Cleveringa was a commercial loan officer at a bank that was not even Schuster's regular bank. Schuster never trusted Cleveringa with his money, the way he did Anderson.

In Iowa, a fiduciary duty does not arise in the context of an "arm's-length business relationship." *Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 138 F.Supp.2d 1144, 1171 (N.D. Iowa 2001). A loan transaction between a bank and borrower is considered to be at arm's length. *See Haupt v. Miller*, 514 N.W.2d 905, 909-10 (Iowa 1994). Summary judgment should be granted on all claims that require the existence of a fiduciary duty.

**B.    Summary Judgment Should Be Granted on the Negligent Misrepresentation Claim (Count IX), Because the Bank Was Not in the Business of Providing Information and the Alleged "Misrepresentations" Were Not Actionable in Any Event.**

Schuster's negligent misrepresentation claim against the Bank also fails, for at least two reasons. The Bank is not a proper negligent misrepresentation defendant in this case, because it was not providing information as a distinct service for a fee, and the alleged statements by Cleveringa (even if he actually made them) are insufficient to serve as the basis for a negligent misrepresentation claim.

The Iowa Supreme Court limits the negligent misrepresentation cause of action to cases where "the information is provided by persons in the business or profession of supplying information to others." *Sain v. Cedar Rapids Comm. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001); *In re Maddigan*, 2004 WL 1159659 (Iowa App. May 26, 2004) (unpublished) ("our supreme court has held that, in Iowa, a claim for negligent representation will lie only if the defendant is in the business or profession of supplying information for the guidance of others.") (citing *Sain*, 626 N.W.2d at 125). The question of whether the Bank was in the business of

supplying information is to be decided by the court as a matter of law. *The Conveyor Co. v. Sunsource Tech. Servs., Inc.*, 398 F.Supp.2d 992, 1015 (N.D. Iowa 2005).

The Iowa Supreme Court has generally refused to allow claims against banks and bank officers for negligent misrepresentation. *See Sturm v. Peoples Trust & Savings Bank*, 713 N.W.2d 1, 5 (Iowa 2006); *Greatbatch v. Metropolitan Federal Bank*, 534 N.W.2d 115, 117-18 (Iowa App. 1995); *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994). The only exception appears to be when the Bank is *selling* an item of information, *e.g.*, an appraisal, for use in a third- party transaction. *Larsen v. United Fed. Sav. & Loan Assn.*, 300 N.W.2d 281, 285 (Iowa 1981). Where the Bank is providing information incidental to an arm's-length transaction with the Bank, or is simply providing information gratuitously, no cause of action will lie.

It is important to note that while Schuster alleges that Cleveringa gave him investment advice, there is no evidence that Schuster directly or indirectly paid for the investment advice. As such, Cleveringa had no duty of care in providing the investment advice as it was either "given gratuitously" or was "incidental to a different service" [*i.e.*, commercial lending]. *The Conveyor Co.*, 398 F.Supp.2d at 1014.

Schuster may argue that Cleveringa's advice related to the Bank's loans because his alleged statements related to investments that were made with the proceeds of the loans. This argument also fails. The Iowa Court of Appeals has specifically rejected a claim of negligent misrepresentation where the alleged misrepresentations concerned the item to be purchased with the proceeds of the loan. *Greatbatch*, 534 N.W. 2d 115. In *Greatbatch*, the plaintiffs obtained a loan to buy a piece of residential property. The loan officer allegedly told the plaintiffs that "all inspections and certifications had been completed" on the property. *Id.* at 116. The plaintiffs

sued after they had problems with the house and discovered that a septic sewer certification had not been done. The court concluded that "the product supplied by the bank was a loan" and there could not be a claim for negligent misrepresentation because the information about the inspection certificate "was incidental to the underlying financial transaction." *Id.* at 118; *see also Haupt*, 514 N.W.2d at 909-10 (affirming dismissal of a negligent misrepresentation claim against a bank's vice president on the basis that the bank was not in the business of supplying information when it provided information related to a loan guarantee transaction).

Moreover, the negligent misrepresentation claim fails for an additional reason: personal opinions or statements of future intent cannot constitute false information for the purposes of a negligent misrepresentation claim. *Sain*, 626 N.W.2d at 127. Whether an "alleged misrepresentation was one of present fact or of opinion or of future intention is a question of law." *Birt v. Wells Fargo Home Mortgage*, 75 P.3d 640, 657-58 (Wyo. 2003) (holding that there were no negligent misrepresentations made by a Wells Fargo employee in conjunction with a loan application).

Schuster alleges only that Cleveringa made statements that the recommended investments were "good" investments and "would make money" (App. 103). Stating that an investment is "good" or "would make money" is a personal opinion and/or a statement of future intent. It is far different from a factual statement about a present or past fact. Schuster admitted that he understood Cleveringa to be offering Cleveringa's opinions or "predictions" about the future performance of the investments (App. 44, 55). No claim for negligent misrepresentation may lie. *See McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 132 (Tenn. App. 1982) ("predictions or other such sales talk regarding the future cannot be the basis on a negligent misrepresentation

action."). If a person could be sued for *negligently* misrepresenting that something was "good" or "would make money," there would be no end to litigation and the courts would be perpetually clogged. Summary judgment should be granted in the Bank's favor on this claim.[3]

**C.    Summary Judgment Should Be Granted on All Loan Rescission Claims (Counts X and XI) Because All Loans were Either Paid Off or Reinstated by Agreement on January 23, 2004, at Which Time the Bank Agreed to Waive All Default Interest.**

Schuster is also attempting to rescind his loans with the Bank based on alleged fraud. However, the undisputed evidence shows that Schuster has no grounds for doing so. On January 23, 2004, Schuster and his son met with the Bank – at a time when his four loans were in default and he already knew that he had lost his Yournet and Witherspoon investments – and agreed to pay off two of the loans and reinstate the other two (App. 112, 126-28). The Bank at that time agreed to write off default interest that was in excess of $100,000 (*id.*). Accordingly, Schuster's fraud in the inducement claims (Counts X and XI) were clearly waived and should be dismissed with prejudice.

"When a person with knowledge of a potential fraud enters into a new agreement concerning the same subject matter, he waives his claim to fraud in the original transaction." *Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996). On January 23, 2004, Schuster already knew that Witherspoon was a scam and that Yournet was bankrupt (App. 112, 127-28). He believed at that time that the Bank had some responsibility, via Cleveringa, and said so (*id.*).

---

[3] Additionally, the same undisputed facts that demonstrate lack of justifiable reliance as a matter of law (*see* H, *infra*) also establish that Schuster was contributorily negligent as a matter of law – which amounts to another defense to the negligent misrepresentation claim. *See* Restatement (Second) of Torts § 552A (contributory negligence a defense to negligent misrepresentation).

Yet, he agreed to an arrangement where two of the loans were paid off and the other two (including the $1.2 million real estate loan) were reinstated and brought current (*id.*).

This case is similar to *Community State Bank v. Des Moines Reproduction Plating, Inc.*, 2003 WL 1529917 (Iowa App. March 26, 2003) (unpublished). In *Community State Bank*, the plaintiff claimed that he had been the victim of fraud when his partners forged his signature on documents and withdrew funds against a line of credit he had guaranteed at the bank. However, after learning of this fraud, the plaintiff signed a new promissory note with the bank. The court concluded that "[b]y signing the new note, [the plaintiff] waived any claim that he was defrauded." *Id.* at *2. As such, the court affirmed the grant of summary judgment for the defendant bank. *Id.*

The case for summary judgment for American State Bank is even stronger. Schuster not only knew about the potential fraud before reaffirming his obligations to the bank, he received a benefit from the reaffirmation. The Bank agreed to forego over $100,000 in default interest. To allow Schuster now to turn around and rescind those loans he reaffirmed would be the height of unfairness. There is no legal basis for such rescission, and American State Bank is entitled to summary judgment on Schuster's fraud in the inducement claims.

**D.    Summary Judgment Should Be Granted on all RICO Claims (Counts XII-XIV) Because There Is No Evidence of an "Enterprise," and the Claims Also Fail to Meet the Requirements of §§ 1962(b), (c), and (d) Respectively.**

Federal RICO requires that illegal activity must have been conducted through an "*enterprise*." 18 U.S.C. § 1962(b) & (c) (emphasis added). An enterprise may be an "association in fact," but it must have a "distinct structure" apart from the racketeering itself. *Davies v. Genesis Medical Center*, 994 F.Supp. 1078, 1088 (S.D. Iowa 1998). "The enterprise is

not the pattern of racketeering activity.... Rather, the enterprise must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern of racketeering." *Asa-Brandt, Inc. v. ADM Investor Services, Inc.*, 344 F.3d 738, 752 (8th Cir. 2003). "An enterprise, as contemplated by RICO, has three essential characteristics: A common or shared purpose, some continuity of structure and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering." *McDonough v. National Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997). *See also Reynolds v. Condon*, 908 F.Supp. 1494, 1509 (N.D. Iowa 1995). Further, under Supreme Court precedent, the enterprise must be something distinct from the defendants ("persons") named in the lawsuit. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-63 (2001). Here, both the "common purpose" and "distinct structure" requirements are lacking – necessitating summary judgment on Schuster's RICO claims (Counts XII-XIV).

In this case, Schuster alleges a single, over-arching enterprise consisting of the Bank, Cleveringa, Anderson, Chuck Hinnenkamp, Darrell Witherspoon, Russ Barber, Creative Marketing, Team, Inc., WWFN, Yournet, Quan Capital, R-Chief, Zaba Industries and "other unnamed entities." Third Amended Complaint ¶ 168. However, there is no evidence of such an "association in fact." Rather, it appears that Schuster made some investments that did not work out. These were different investments. Yournet was an internet company based in Minnesota (App. 14-16). Witherspoon was a scam based in North Carolina (App. 87).[4] Chuck

---

[4] Schuster also alleges that Team Inc. and Zaba are part of the "enterprise." However, he concedes that these investments were recommended to him by Anderson alone, and that Cleveringa and the Bank had nothing to do with them (App. 12).

Hinnenkamp was involved in Yournet alone (App. 15, 68). Darrell Witherspoon was involved in Witherspoon alone (App. 87). While Schuster may allege that both of these investments were promoted by Anderson and Cleveringa, there is no evidence that the two investments had a common purpose or a distinct structure.

There is also no evidence that the Bank had any involvement in any of these matters, other than making commercial loans to Schuster that he used to fund some, but not all, of these investments. Cleveringa's supervisors had no knowledge of Witherspoon until after Schuster had already made his investments (App. 18, 132), and their only knowledge of Yournet was that they had turned it down as collateral in December 2000 and that Schuster, if he wanted, could borrow against his CD's (App. 252).

In effect, Schuster is asserting that where an accountant and a banker allegedly recommend two different, but ultimately unsuccessful investments, that establishes an enterprise for RICO purposes. Yet, this falls far short of the required "common purpose" and "distinct structure." "That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity." *McDonough*, 108 F.3d at 177. Also, it is not sufficient that Anderson and Cleveringa may have jointly had a shared purpose (which the Bank denies). "[T]he question is whether the *enterprise* can be defined by a shared purpose." *DeWit v. Firstar*, 904 F.Supp. 1476, 1522 (N.D. Iowa 1995).

The Eighth Circuit has defined the "distinct structure" element as follows:

> The distinct structure might be demonstrated by proof that a group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes.

*Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir.1992). Such a structure is simply absent here. Accordingly, summary judgment should be granted to the Bank on Counts XII, XIII, and XIV.

The alleged enterprise in this case does not exist as a legal entity. Accordingly, Schuster must prove the existence of an "association-in-fact." The Third Circuit has developed a three-prong test for determining whether an association-in-fact constitutes an enterprise. Under the three-prong test, which has been adopted by this Court, the plaintiff must show the existence of "(1) an ongoing organization, (2) proof that the various associates function as a continuing unit, and (3) an entity separate and apart from the pattern of activity in which it engages." *DeWit*, 904 F.Supp. at 1521-22 (citing *U.S. v. Console*, 13 F.3d 641, 651 (3d Cir. 1993)) (internal quotations omitted). The Third Circuit elaborated on the requirements of the first prong. It stated the plaintiff must show "some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for controlling and directing the affairs of the group for the group on an ongoing, rather than an ad hoc basis." *Console*, 13 F.3d at 651. Schuster has offered no description of any formal or informal structure of the alleged enterprise. He has offered no explanation of how the group makes decisions or conducts its affairs. Accordingly, his claim must fail. *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1083 (9th Cir. 2000) (rejecting a RICO claim because the plaintiff "never alleged the existence of a system of authority that guided the operation of the enterprise.").

Schuster's description of the internal structures of the Bank and other entities in his complaint does nothing to advance his claim. "[I]t is the RICO enterprise, not its constituent entities, that must display the requisite structure." *DeWit*, 904 F.Supp. at 1522. Similarly,

Schuster cannot save his claim by referring to the fraud the alleged enterprise allegedly committed. "[A] group does not constitute an enterprise unless it exists independently from the racketeering activity in which it engages." *Simon*, 208 F.3d at 1083.

Schuster's RICO claims also must fail because he has failed to allege – let alone provide evidence on – the specific elements of § 1962(b) and (c). With respect to § 1962(b) Schuster has failed to allege how American State Bank "acquired or maintained" an interest in the RICO enterprise through a pattern of racketeering activity. "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1189-90 (3rd Cir. 1993).

Additionally, Schuster has failed to allege how the "acquisition or maintenance" of the interest caused any injury:

> In order to recover under [§ 1962(b)], a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts. "Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise."

*Lightning Lube*, 4 F.3d at 1189-90 (*quoting Casper v. Paine Webber Group, Inc.*, 787 F.Supp. 1480, 1494 (D.N.J.1992)) (internal citations omitted); *see also Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n*, 76 F.3d 315, 329 (6th Cir. 1999) ("[A] complaint for violation of § 1962(b) must allege an acquisition or maintenance injury separate and apart from the injury suffered as a result of the predicate acts of racketeering activity.") (internal quotations omitted). "To state a claim for damages, a plaintiff must allege injury 'by reason of a

violation of' a substantive RICO provision.  By its words, § 1962(a) is violated, not by racketeering activity itself, but rather by use or investment of racketeering income in an enterprise." *Airlines Reporting Corp. v. Barry*, 666 F.Supp. 1311, 1314-15 (D. Minn. 1987). "Similarly, to recover damages 'by reason of' a violation of § 1962(b), a plaintiff must demonstrate an injury resulting from the acquisition or maintenance of an interstate enterprise through criminal behavior." *Id.*

In *O & G Carriers, Inc. v. Smith*, 799 F.Supp. 1528 (S.D.N.Y. 1992), the plaintiffs alleged that the defendants fraudulently induced them to make bad investments.  The court dismissed the plaintiff's RICO claims on the basis that, *inter alia*, the "[p]laintiffs' claim that the alleged predicate acts induced them to invest does not afford a basis for § 1962(b) liability." *Id.* at 1543.

Similarly, Schuster's § 1962(c) claim must fail because he has not alleged that the Bank participated in the alleged enterprise's affairs "through a pattern of racketeering activity." Asserting that the purported RICO enterprise engaged in racketeering is not the same thing as alleging, let alone showing, that the Bank participated in the affairs through such activity.  "Mere participation in the predicate offenses listed in RICO, even in conjunction with a RICO enterprise, may be insufficient to support a RICO cause of action. A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself." *Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir. 1983) (en banc).

In light of the deficiencies in Schuster's § 1962(b) and (c) claims, the Bank is also entitled to summary judgment on the § 1962(d) claim. "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube*, 4 F.3d at 1191.

**E.**  **Summary Judgment Should be Granted on the Negligent Supervision Claim (Count XVI) Because Schuster Cannot Establish that American State Bank Should Have Known of Cleveringa's Allegedly Tortious Conduct or that Its Allegedly Negligent Supervision Proximately Caused Schuster's Losses.**

If Schuster cannot demonstrate tortious conduct by Cleveringa, his claim of negligent supervision by the Bank necessarily fails. *IMT Ins. Co. v. Crestmoor Golf Club*, 702 N.W.2d 492, 496 (Iowa 2005) ("A necessary element of a claim for negligent supervision or retention is an underlying tort or wrongful act committed by the employee."). Thus, if summary judgment is granted to Cleveringa on the tort claims against him, the negligent supervision claim against the Bank necessarily fails as well.

Even if tortious conduct by Cleveringa were shown, however, Schuster must also demonstrate that the Bank "knew, or in the exercise of ordinary care should have known" of Cleveringa's unfitness at the time he engaged in wrongful or tortious conduct. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 680 (Iowa 2004). Schuster has not alleged that the Bank actually knew of Cleveringa's alleged misconduct, nor has he properly alleged or provided evidence of how it should have known.

Additionally, Schuster must prove that the negligent supervision "proximately caused" his losses. *Estate of Harris*, 679 N.W.2d at 680. There are three reasons why Schuster lacks evidence that the alleged negligent supervision "proximately caused" his losses. *See Fredericksburg Farmers Coop v. Stanley and Elwood Farms*, 2001 WL 1580488 (Iowa App.

Dec. 12, 2001) (unpublished decision) (holding that trial court did not err in failing to submit certain specifications of negligent supervision to the jury when there was no evidence they proximately caused the plaintiff's losses).

First, because Schuster would have made the same investment decisions based on Anderson's advice, Schuster cannot establish that "but for" Cleveringa's actions the losses would not have occurred. Many of Schuster's investments occurred before he had any relationship with the Bank or in situations where he did not speak with Cleveringa prior to investing (App. 97-98, 115). Schuster admits he probably would have made the same investments based on Anderson's advice even if he had never met Cleveringa:

> Q.    Would it be fair to say, Mr. Schuster, that if you had never ever met Cal Cleveringa, and Fay Anderson had still recommended these investments, you probably still would have made them?
>
> A.    Probably.

(App. 102.)

Second, if the Bank had prevented Schuster from taking out loans, Schuster could simply have obtained the loans from Primebank, with which Schuster had a longtime banking relationship:

> Q. You could have borrowed for your investments from your regular bank; is that right?
>
> A. Yes.

(App. 112.) In fact, for many of the investments, Schuster simply wrote checks (or had his bookkeeper write checks) out of his Primebank account, usually to Fay Anderson or the Anderson family corporation R Chief, not borrowing any money at all (App. 179-80, 192-209).

Third, if the Bank had removed Cleveringa from the Schuster borrowing relationship, there is no showing that would have made a difference. Schuster was the owner of a multi-million dollar company who was at all times a creditworthy borrower. As noted, he could have borrowed at his regular bank (App. 111-12). Anyone at the Bank would have made the same loans to Schuster given the collateral that he had, namely CD's and real estate. Cleveringa's boss at the Bank admitted that he would have loaned money to Schuster to invest in a lawsuit at a high rate of return (*i.e.*, Witherspoon) if there had been "certificates of deposit, annuities, real estate" posted as collateral (App. 133).

Simply stated, this case does not involve bad lending decisions, it involves bad investment decisions. Since it is not a bank's job to oversee a customer's investment decisions, there is no showing that additional "supervision" (whatever that means) would have prevented Schuster's investment losses.

**F.    Summary Judgment Should Be Granted on the Conversion Claim (Count XX) Because There Is No Proof that the Bank Converted Funds Belonging to Schuster or That Schuster Suffered Loss from the Alleged Conversion.**

"Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Condon Auto Sales & Service, Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999). The only property at issue here is Schuster's money. Schuster alleges that "Cleveringa and ASB... exercised control over Schuster's money and/or loan proceeds from ASB, in a manner that was inconsistent with and in derogation of the uses for which Schuster agreed his money and/or loan proceeds could be used." Third Amended Complaint ¶ 212. According to Schuster's expert, a total of $432,429.54 was "misappropriated"

in this manner (App. 263).  Basically, these are funds that were borrowed by Schuster on either February 6, 2002 or August 26, 2002, and then allegedly not used as he desired.

There are several fatal flaws in this claim.  In the first place, of the $432,429.54, a total of $133,788.86 consists of funds that were borrowed on February 6, 2002 by Schuster (App. 269-70).  Schuster contends those funds were supposed to be used for Yournet (App. 70A).  In fact, those borrowed funds *were* deposited into a Yournet bank account (App. 10).  Cleveringa was not a signatory on the Yournet account (although Anderson was) (App. 321).  Thus, if those funds were misappropriated, it was not Cleveringa's and certainly not the Bank's "misappropriation."

Second, $169,015.83 of the "converted" funds were borrowed on or about August 26, 2002 by Schuster, deposited into an R Chief account (an account controlled by Anderson), and subsequently transferred elsewhere by R Chief (App. 11, 270).  According to Schuster, these funds were to be used to "clear up Yournet bills" (App. 71).  Schuster now apparently contends that R Chief did *not* use the funds to clear up Yournet bills.  However, Cleveringa was not a signatory on the R Chief account, either (App. 322-28).  Moreover, Schuster regularly made transfers to R Chief as his vehicle for investments, relying on Anderson to do as he instructed (App. 38, 101).  Thus, if anyone misappropriated funds, it was R Chief or Anderson.

Third, the rest of the funds ($129,634.85) were borrowed by Schuster on August 26, 2002 and allegedly used that day to pay off loans taken out by Anderson, contrary to his wishes.  However, there is no evidence that this money was actually converted.  It is undisputed that Schuster was actually present at the Bank that day when the loan was taken out (App. 57, 125).

If anything had been done against his wishes, he would have known. It is also undisputed that

Anderson had guaranteed the August 26, 2002 loan and is presently paying off half that loan.

Alternatively, summary judgment should be granted on the conversion claims because

there is no evidence that Schuster suffered any loss. Had all the $432,429.54 gone to Yournet, or

to pay Yournet bills, as Schuster claims he desired, Schuster still would have lost that money. It

is undisputed that Yournet filed bankruptcy with debts far in excess of liabilities (App. 273).

There is no genuine issue of material fact, and summary judgment should be granted to

the Bank on the conversion claim (Count XX) as well.

**G.**     **Summary Judgment Should Be Granted on All Securities Fraud Claims (Counts XXII and XXIV) Because These Claims are Barred by the Statute of Limitations, Schuster Cannot Establish Loss Causation, Schuster Has Insufficient Evidence of Control by the Bank, and There Was No Fraud in Connection with the Sale of a Security.**

The Bank is entitled to summary judgment on Schuster's securities fraud claims on

multiple grounds.

First, any securities claims related to Yournet are barred by the statute of limitations. It is

undisputed that notices of Yournet's bankruptcy proceedings were mailed to two separate

Schuster addresses on August 13, 2002 (App. 92). At that point, Schuster knew he was not

going to get his money back (App. 121). Yet Schuster did not file suit until September 21, 2004,

more than two years after Yournet declared bankruptcy. (He did not add his securities fraud

claims until August 2005, but for purposes of this motion only, we will assume that those claims

relate back to the original filing date.)

Accordingly, his state and federal securities claims are barred by the statute of

limitations. "Iowa Code section 502.504(2) requires that a securities fraud enforcement action

must be brought within the shorter of (1) five years after the act or transaction concerning the violation or (2) two years after notice of the violation." *Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996). The window for filing the federal securities claims is even narrower as they must have been filed within one year after the discovery of the alleged fraud. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 361 (1991).

The "discovery rule" only tolls the statute of limitations "until the plaintiff has discovered the fact of the injury and its cause or by the exercise of reasonable diligence *should* have discovered these facts." *Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006) (internal quotations omitted) (emphasis added). Schuster should have been on inquiry notice of any alleged fraud when he received notices of bankruptcy for Yournet in August 2002.[5]

Second, Schuster cannot establish loss causation, *i.e.*, "a causal connection between the material misrepresentation and the loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627, 1631 (2005). As the Court will recall, this issue surfaced during the proceedings on the Bank's renewed motion to dismiss. It was not disputed that Schuster had to prove more than "but for" causation, *i.e.*, "had he known the truth he would not have acted." *Id.* at 1632. Rather, Schuster had to prove that the fraud "proximately caused" the loss. *Id.*

---

[5] Schuster's securities fraud claims appear to be limited to Yournet. Third Amended Complaint ¶ 226. We assume that this is at least in part because any Witherspoon investment cannot constitute a security under federal or Iowa law. *See* 15 U.S.C. § 78c(10) (security does not include a note with maturity of less than nine months); *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946) (security involves profits to be derived from the entrepreneurial or managerial efforts of others); *State v. Kraklio*, 560 N.W.2d 16, 18 (Iowa 1997) (same). Here, the profits Schuster hoped to receive were not based on the entrepreneurial or management efforts of anyone. Rather, he just planned to loan Witherspoon the money for a short period and then reap the rewards when Witherspoon claimed the award that a jury had already assigned to him.

In this case, the only securities misrepresentation specifically alleged by Schuster is that Schuster's funds "would be used for the purpose of investing in Yournet." Third Amended Complaint ¶ 226. As we argued in our earlier motion to dismiss, Yournet went into bankruptcy, so Schuster would have lost his money even it had been "used for the purpose of investing in Yournet." Thus, in the Bank's view, there was no loss causation. However, this Court denied the Bank's motion, reasoning that potentially the alleged diversion of Schuster's funds *caused* Yournet's bankruptcy. *Schuster v. Anderson*, 413 F.Supp.2d 983, 1015 (N.D. Iowa 2005).

While the Bank understands the Court's analysis for purposes of a motion to dismiss, summary judgment proceedings require evidence. There is no evidence that the alleged diversion of Schuster's funds caused Yournet to go bankrupt. According to Schuster's own expert, the "misappropriated funds" amounted to at most $432,429.54 (App. 263). Of these so-called "misappropriated funds," $133,788.86 were actually deposited into a Yournet account. Whether the alleged figure is $432,429.54 or something smaller, however, there is no evidence that it could have rescued Yournet. When Yournet entered bankruptcy in July 2002, it had virtually no assets and approximately $4 million in debt (App. 273).

Third, Schuster's attempts to hold American State Bank liable for securities fraud are strained at the outset. The typical claim against a "controlling person" for an underlying violation of Section 10(b) of the Securities and Exchange Act of 1934 is made against a broker or the officers of a brokerage. Here, although Cleveringa never personally "sold" Schuster a security, Schuster seeks to hold Cleveringa's non-broker employer liable for statements Cleveringa made.

It is important to bear in mind that the alleged primary violation is not the issuance of loans by the Bank. Rather, the alleged underlying violation is that Cleveringa made representations that Schuster's investments would be used for the purpose of investing in Yournet. There is no evidence that American State Bank knew Cleveringa made these representations and certainly no evidence that the Bank knew the representations were false.

It is not sufficient for Schuster to show that American State Bank generally controlled Cleveringa's actions. Schuster must show that American State Bank "'possessed the power to control the specific transaction or activity upon which the primary violation is predicated.'" *Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985) (internal quotations omitted). Schuster cannot demonstrate that American State Bank had the power to control all of Cleveringa's statements, particularly those that were not germane to Cleveringa's role as a loan officer.

Fourth, there is an additional logical flaw in Schuster's securities claims. If Schuster contends that some of his funds were misappropriated and not invested in Yournet as he intended, then he might have some cause of action, but it is *not* securities fraud. Telling someone that you will invest their money in Yournet,[6] and then not investing it in Yournet, does not constitute a fraud in connection with the sale of a security because in fact no sale ever occurred.

The Supreme Court has unequivocally held that actions arising out of Section 10(b) and Rule 10b-5 are limited to actual purchases and sellers of securities. *Blue Chip Stamps v. Manor*

---

[6] Remember, Schuster had a regular practice of providing checks to Fay Anderson or R Chief (a company owned by Anderson's wife). He then relied on Anderson to use the money as he had instructed (App. 38, 101).

*Drug Stores*, 421 U.S. 723, 734-36 (1975). Here the alleged fraud only occurred at times that no

sale occurred. This case is similar to *John v. Blackstock*, 664 F.Supp. 1426 (M.D. Fla. 1987). In

*John*, the defendant stockbroker misappropriated the plaintiffs' funds for personal use rather than

putting them in a fictional "house account" where the plaintiffs wished the money to be

deposited. The court granted the defendants' motion to dismiss stating:

> The Court concludes that in the present actions, plaintiffs are asserting a Rule
> 10b-5 claim on the basis of an *attempt* to invest in securities and not in connection
> with the purchase and sale of securities. Rule 10b-5 is not intended to address
> fraudulent statements to induce a party into depositing funds in securities
> accounts when no securities are actually purchased or sold.

*Id. at* 1428. Likewise, in *Superintendent of Ins. of N.Y. v. Freedman*, 443 F.Supp. 628, 634

(S.D.N.Y. 1977), the court rejected the plaintiff's claims of securities fraud when the money the

plaintiff intended to invest in a legitimate security was instead misappropriated and put to

another purpose.

**H.    Summary Judgment Should Be Granted on All Misrepresentation Claims (Counts
VI, IX, X, XI, XII, XIII, XIV, XXII, and XXIV) Because Schuster Cannot Establish
Justifiable Reliance.**

Furthermore, all of Schuster's misrepresentation claims are legally deficient because he

cannot establish the necessary element of "justifiable reliance" on Cleveringa's alleged

statements. *See Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 53 (Iowa 2003) (stating that

justifiable reliance is a common element of fraud, negligent misrepresentation and fraudulent

inducement claims). "Reliance upon the information is justifiable if a person acting with

reasonable and ordinary prudence and caution would have a right to rely on the representations."

*Pollmann v. Belle Plaine Livestock Auction*, 567 N.W.2d 405, 410 (Iowa 1997) (internal

quotations omitted). *See also Davidson v. Wilson*, 973 F.2d 1391, 1400 (8th Cir. 1992)

(justifiable reliance is an element of a federal securities fraud claim); *State v. Tyler*, 512 N.W.2d 552, 555 (Iowa 1994) (justifiable reliance is an element of a state securities fraud claim).

In this case, the undisputed evidence shows that Schuster had ample first-hand information about Yournet. He always knew it was an internet start-up (App. 55, 69). He visited its offices in Minneapolis several times (App. 67). He received financial information showing the company had no sales and a negative net worth (App. 46, 82, 177-78). He was told at meetings that the company did not have enough money to operate, and that Chapter 11 was discussed but not considered an option because of tax liens (App. 83-86, 182, 188-89). By May 2001, he admits he knew his Yournet investments were going down the tubes (App. 49, 107). Cleveringa told him directly at that time that his CD's were at risk (App. 107). Yet he continued to invest, at least partly to "bail out" Anderson, who had personally guaranteed various Yournet debts (App. 35-36, 108).

Given these undisputed facts, there is simply no genuine issue of fact that Schuster did *not* reasonably rely on the vague statements made by Cleveringa that Yournet was a "good" deal and would "make money." By Schuster's own admission, Cleveringa was just saying "the typical thing that people say about an investment" (App. 103). Schuster did not believe that Cleveringa had any management role in Yournet:

> Q.    Other than being at meetings when you were also present, are you aware of anything he did relating to running Yournet?
>
> A.    Not really, no.
>
> Q.    And did you also go to some meetings where Cal Cleveringa was not present up in Minneapolis?
>
> A.    I might have.

(App. 45.)

Similarly, there is no triable issue regarding Schuster's lack of justifiable reliance on statements made by Cleveringa concerning Witherspoon. Schuster openly and repeatedly admitted that he should have known Witherspoon was a scam:

> Q.    So you should have known, based on that information [*i.e.*, the 500-1000 % short-term rate of return], that it was a scam?
>
> A.    Yes.

(App. 40, 91.)

> Q.    If they [Anderson and Cleveringa] should have known, should you have known?
>
> A.    Yes.

(App. 90.) In light of these admissions, and Schuster's further admissions that the Witherspoon deal was "kind of unbelievable" and "too good to be true" (App. 88, 114), Schuster cannot claim that he justifiably relied on bland statements by Cleveringa that Witherspoon was a good deal and would make money.

For these reasons, summary judgment should be granted in the Bank's favor on all misrepresentation claims based on the lack of justifiable reliance – specifically, Counts VI, VII, IX, X, XI, XII, XIII, XIV, XXII, and XXIV.

**I.    Summary Judgment Should Be Granted on All Claims Except Negligent Supervision Because Any Challenged Actions of Cleveringa Were Not Within the Scope of His Employment.**

With the exception of Count XVI (alleging Negligent Supervision of Cleveringa by the Bank), all of Schuster's claims against the Bank are premised on the actions of Cal Cleveringa who was formerly employed by the Bank. Schuster seeks to prove that the actions of Cleveringa were actionable and then hold the Bank liable under the doctrine of respondeat superior.

However, if Schuster cannot establish a prima facie case for liability under respondeat superior, the Bank is entitled to summary judgment on nearly all of Schuster's claims.

For the Bank to be held liable for the actions of Cleveringa, Schuster must prove that the wrongful acts of Cleveringa occurred while he was acting within the scope of his employment. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). For an act to be "within the scope of employment," "the conduct complained of 'must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Id.* (quoting *Sandman v. Hagan*, 154 N.W.2d 113, 117 (Iowa 1967)). "[A]n act is deemed to be within the scope of one's employment 'where such act is necessary to accomplish the purpose of the employment and is intended for such purpose.'" *Id.* (quoting *Sandman*, 154 N.W.2d at 117).

The question of whether an act substantially deviates from the employer's business may be a question for the court. *Id.* Schuster's contention that Cleveringa made statements from his office at the Bank (when Anderson would have also been present) is not dispositive. *See id.* at 707 (rejecting a claim of respondeat superior against a school district even though the alleged wrongdoing occurred on district property). Similarly, it is not sufficient for Schuster to demonstrate that the wrongdoing would not have occurred "but for" Cleveringa's employment by the Bank. *See id.*

Cleveringa was a loan officer at the Bank. Providing investment advice was not part of his duties (App. 134). Nor is it "of the same general nature" as issuing a loan, nor is it "necessary to accomplish the purpose" of issuing loans. Schuster himself agreed that when dealing with a bank, he would not normally ask the bank for investment advice, and that his regular banker did not provide such advice (App. 43). The Bank never received, nor stood to

receive, any compensation for the investment advice allegedly offered by Cleveringa. If customers of the Bank request investment advice, they are directed to a separate facility located across the street where investments are sold through a separate company known as PrimeVest (App. 134). For these undisputed reasons, summary judgment should be granted.

Schuster's claims predicated on fraud or conversion (III, VI, VII, X, XI, XII, XIII, XIV, XX, XXII, and XXIV) face an additional hurdle in establishing the Bank's liability because fraud and conversion are intentional torts. *Wilson v. Vanden Berg*, 687 N.W.2d 575, 587 (Iowa 2004) (fraud); *State Sav. Bank v. Allis-Chalmers Corp.*, 431 N.W.2d 383, 387 (Iowa App. 1988) (fraud and conversion).

"[T]he doctrine of respondeat superior makes an employer liable only for those intentional wrongs of his employees that are committed in furtherance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong." *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010, 1015 (8th Cir. 1988) (applying Iowa law). There is no evidence that Cleveringa believed or could have believed he was doing the Bank's business in (allegedly) telling Schuster that Yournet or Witherspoon were good investments. There is no evidence that Cleveringa believed or could have believed he was doing the Bank's business in (allegedly) misappropriating Schuster's loan proceeds. In fact, in *Daigle v. Hibernia National Bank*, __ So.2d __, 2006 WL 2762553 (La. App. 2006), the Louisiana Court of Appeal granted summary judgment to a bank, specifically holding that a loan officer's misapplication of loan proceeds did not fall within the scope of his employment.

*Mitchell v. Norman James Const. Co.*, 684 N.E.2d 872 (Ill. App. 1997), also illustrates these points. In that case, a homeowner sued the bank which had made a home improvement

loan to her, alleging that the bank's loan officer had made a faulty - indeed fraudulent - recommendation of a contractor she should use.    Allegedly, the loan officer had falsely represented that he had special knowledge regarding home improvement contractors, that this contractor had been recommended to other homeowners, and that other homeowners had been satisfied with the work.  The court upheld the dismissal of all claims against the bank based on failure to establish respondeat superior.  *Id.* at 879.  To the extent the loan officer recommended how the loan proceeds should be used, he was acting outside the scope of his employment.

**J.    Summary Judgment Should Be Granted on All Fraud Claims Related to the Witherspoon Affair (Including RICO) Because Schuster Cannot Establish that Any Statements Cleveringa Made About Witherspoon Were Knowingly False.**

Schuster's *de facto* attorney told the FBI that Schuster's understanding of Witherspoon "was almost exclusively through Mr. Anderson and, to a much lesser extent, Mr. Cleveri[ng]a" (App. 6-7, 219).  Even if that were not true, the unchallenged record shows that Cleveringa believed what he allegedly told Schuster about Witherspoon (App. 39, 87, 89).  For that reason alone, summary judgment should be granted on all fraud claims related to Witherspoon.

Schuster admits Cleveringa believed in the truthfulness of the vague statements he is alleged to have made regarding Witherspoon, *i.e.*, that it was a good investment: "I think they [Anderson and Cleveringa] believed it just like I did" (App. 39).  This alone is enough to defeat all claims of fraud related to Witherspoon.  There is no evidence that Cleveringa knew his statements regarding Witherspoon were false or intended to deceive Schuster.  "A fraudulent misrepresentation claim... requires that the defendant knew the representation was false (scienter), and that the defendant intended to deceive the plaintiff."  *Magnusson Agency v. Public Entity Nat. Company-Midwest*, 560 N.W.2d 20, 28 (Iowa 1997) (applying Iowa law and

affirming a grant of summary judgment for the defendant where the alleged misrepresentation was that the defendant would "take care of [the plaintiff] and its customers").

Accordingly, summary judgment should be granted on those portions of Counts VI, VII, X, XI, XII, XIII, XIV, XXII, and XXIV relating to the Witherspoon investment.

## K.    Summary Judgment Should Be Granted on All Claims Relating to Pre-November 2000 Investments.

Although the Bank should not be held responsible for any of Schuster's personal investment decisions, the absence of liability is even clearer in the case of those investments made prior to Schuster taking out his first loan from the Bank on November 1, 2000. It is undisputed that Schuster never had any sort of banking relationship with the Bank prior to taking out that initial loan (App. 97). Furthermore, Mr. Schuster testified clearly, unequivocally, and accurately that the first time he spoke with Cleveringa was right around the time that he took out the first loan from the Bank (App. 97-98).

At his trial preservation deposition taken in November 2005, Mr. Schuster was asked about a portion of the transcript from his discovery deposition. The exchange went as follows:

> Q:    I'm going to show you page 450 of your deposition. And, Mr. Schuster, I'm looking at line 16. Do you see that? And, I'm going to read it into the record. Question: "okay. So you think the first time that you actually talked to Cal Cleveringa was right around the first time you actually borrowed money at American State Bank? Answer: "Yes." Question: "Is that right?" Answer: "Yes." Did I read that correctly Mr. Schuster?
>
> A:    Yes.

(App. 97-98.) Just to be clear that Mr. Schuster had not changed his mind since the discovery deposition, the following questions were asked:

> Q:    So that was your testimony at the deposition about a month ago, correct?

A:    Yes.

Q:    And that is your testimony today?

A:    Yes.

(App. 98.)

Accordingly, the pre-November 2000 investments that were made by Orville Schuster should not be a part of this case. Indeed, some of those investments were in Team Inc., an entity that Schuster admits Cleveringa never spoke to him about (App. 37, 102-03).

Even if it were permissible for Schuster now to try to sidestep the foregoing testimony, and it is not,[7] that would not render the Bank liable. Any statements Cleveringa could have made away from the premises of the Bank, before Schuster had any relationship with the Bank or was contemplating borrowing from the Bank, would have been far beyond the scope of Cleveringa's employment as loan officer. So, there is certainly no evidence that would tie the Bank to any investments made by Schuster before November 2000. Summary judgment should be granted on all pre-November 2000 investments.

## CONCLUSION

For the foregoing reasons, American State Bank's motion for summary judgment should be granted.

---

[7] Earlier in the preservation deposition, in response to leading questions from his own counsel, and in contradiction to what he had testified in the discovery deposition, Schuster suggested that he had spoken to Cleveringa before November 2000. However, as noted above, this was unequivocally cleared up in cross-examination and Schuster's counsel never went back to the point (App. 97-98).

BELIN LAMSON McCORMICK ZUMBACH
FLYNN, A Professional Corporation

By:/s/ Edward M. Mansfield
    Edward M. Mansfield      AT0004912
    David W. Nelmark       AT0005677

The Financial Center
666 Walnut Street Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 243-7100
Telecopier: (515) 243-1408
E-Mail:  emmansfield@belinlaw.com
E-Mail:  dwnelmark@belinlaw.com

Mr. Lloyd Bierma
Oostra & Bierma, P.L.C.
32 6th Street Northwest
Sioux Center, IA  51250
Telephone:  (712) 722-2424
Telecopier:  (712) 722-2480

ATTORNEYS FOR DEFENDANT AMERICAN
STATE BANK

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was
served upon the parties to this action by serving a copy upon each
of the attorneys listed below on _____, 2006 by

☐ U.S. Mail          ☐ FAX

☐ Hand Delivered    ☒ Electronic Mail

☐ FedEx/ Overnight Carrier  ☐ Other

Terrence D. Brown       John C. Gray
Hixson & Brown         Heidman, Redmond, Fredregill, Patterson,
1360 121st Street, Suite A  Plaza, Dykstra & Prahl, L.L.P.
Clive, Iowa  50325       P.O. Box 3086
                     1128 Historic 4th Street
                     Sioux City, IA 51101

Signature: /s/ Paulette Ciurl

d:\a0418\01\brief-sj-10-31-06.doc